Felice K. Shea, J.
In this foster care review proceeding pursuant to section 392 of the Social Services Law, the court is asked to determine the conflicting rights of two foster mothers, both of whom have expressed a desire to adopt Dionisio and Richard R., twin brothers born out of wedlock on July 4, 1971, whose natural parents have surrendered them for adoption.
The Facts
On August 19, 1971, Dionisio’s and Richard’s mother signed a voluntary commitment authorizing the Commissioner of Social Services to place the infants in foster care. The Commissioner gave casework responsibility for supervising the foster care placement of the boys to the New York Catholic *437 Guardian Society (the "agency”), which placed them in the home of Mr. and Mrs. Anthony Lopez, where they remained until February 11, 1974, a period of more than 24 months.
In its report to the Department of Social Services dated May 24, 1973, the agency stated that the adjustment of the boys to the Lopez home "could be considered as very good” and that the "plan is for the children) to be adopted by the foster parents” as soon as they are free for adoption.[1] By the time this matter came before the court on April 4, 1974, for a review of foster care, the situation in the Lopez home had changed. According to agency reports, Mr. and Mrs. Lopez were experiencing marital difficulties and had lost their apartment. Mrs. Lopez had moved in with her parents temporarily and shortly thereafter her father suffered a stroke. The agency advised Mrs. Lopez that because of the emotional stress, unsettled living conditions and physical illness in her family, it planned to move the children. On February 6, 1974, Mrs. Lopez signed what the agency referred to as a "waiver of a hearing”. On February 11, 1974, the boys were moved to the home of Mr. and Mrs. Benny Manco.
By May, 1974, Mrs. Lopez had obtained an apartment and had brought her own four children back to live with her. However, according to the agency, Mr. and Mrs. Lopez were estranged and Mr. Lopez’ whereabouts were unknown.
Meanwhile, Richard and Dionisio were living in the home of Mr. and Mrs. Manco, a childless couple who had been married for nine years. Mr. Manco worked as a bus driver. Mrs. Manco had worked as a computer keypunch operator for 12 years. In April, 1974, just two months after the twins came to live with the Mancos, the foster father was tragically killed in an automobile accident.
Because of these developments, the agency advised the court, by report dated May 29, 1974, that it needed additional time to determine if adoption by either of the foster mothers would be in the children’s best interests.
Between June, 1974 and January, 1975, the review of the foster care status of the R. twins came before this court four times. Both foster mothers appeared in court, expressed an *438 interest in adopting the twins, and stated they were able to pay for counsel. Mrs. Manco engaged an attorney, but Mrs. Lopez did not bring an attorney to court to represent her. On two court dates, Mrs. Lopez failed to appear although she sent her adult daughter on her behalf on one occasion.
The court psychologist interviewed Mrs. Manco on January 3, 1975 and submitted a favorable written evaluation of her parental capacity, recommending that the twins be adopted by her. A Law Guardian was appointed for the children and he also recommended adoption by Mrs. Manco as being in the best interest of his wards.
Social Services Law, § 392
Section 392 of the Social Services Law mandates periodic review by the Family Court of the status of children in foster care. In enacting the statute, which directs the court to consider less costly alternatives to foster care, the Legislature may have hoped to save money — a purpose noted in Matter of Carla L. (77 Misc 2d 363, 364). But the Legislature also intended to prevent foster children from becoming "lost” children and to expedite the making of permanent plans for them. (Matter of Barbara P., 71 Misc 2d 965, 969; see, also, 1970 NY Legis Ann, p 32.)
Subdivision 7 of section 392 permits one of four dispositions to be made "in accordance with the best interest of the child.” The review of the foster care of the R. children, who have been freed for adoption by surrender instruments signed by their parents, is governed by paragraph (d) of subdivision 7 which provides that the court shall enter an order "directing that such child be placed for adoption in the foster family home where he resides or has resided or with any other person or persons.”[2]
Section 392 also provides that:
"4. Notice of the hearing shall be given and a copy of the petition shall be served upon the following, each of whom shall be a party entitled to participate in the proceeding:
* * *
"(c) the foster parent or parents in whose home the child *439 resided or resides at or after the expiration of a continuous period of twenty-four months in foster care;
* * *
"(e) such other persons as the court may, in its discretion, direct.”
Section 392 (subd 4, par [c]), while not completely clear, appears to encompass both Mrs. Manco, in whose home the children resided at the time the review petition came before this court, and Mrs. Lopez, in whose home they formerly resided. Both foster mothers received notice (Mrs. Manco by court direction); each appeared, and the court finds that they are both proper parties to this proceeding.
Social Services Law, § 383, Subd 3 — Preferences to Foster Parents
In determining the best interests of the two young R. boys, the court must also consider the statutes providing legal rights for foster parents, since they express a legislative policy that the best interests of children are not served by uprooting them needlessly from homes in which deep attachments have been formed. (Matter of Catherine S., 74 Misc 2d 154; Foster, Adoption and Child Custody: Best Interest of The Child?, 22 Buffalo L Rev 1, 13.)
Following the decision in Matter of Jewish Child Care Assn, of NY (5 NY2d 222)[3] New York reversed its policy against allowing foster parents to adopt foster children and in 1969 amended section 383 of the Social Services Law to grant a preference to foster parents who have cared for a child for. two years or more.[4] Subdivision 3 of section 383 provides, in pertinent part: "Any adult husband and his adult wife and any adult unmarried person, who, as foster parent or parents, have cared for a child continuously for a period of two years *440 or more, may apply to * * * [an] authorized agency for the placement of said child with them for the purpose of adoption, and if said child is eligible for adoption, the agency shall give preference and first consideration to their application over all other applications for adoption placements. However, final determination of the propriety of said adoption of such foster child shall be within the sole discretion of the court, as otherwise provided herein.”

(a) Waiver of Preference; Social Services Law, §400

The agency and the present foster mother, Mrs. Manco, argue that Mrs. Lopez is not entitled to a preference under subdivision 3 of section 383 because when the agency determined to remove the twins from her home, she executed a written waiver of what is claimed to be her sole remedy, namely, administrative review pursuant to section 400 of the Social Services Law.[5] In fact, the document signed by Mrs. Lopez waived only "the ten day’s [sic] notice usually given to a foster parent before removing a child” and advised her of her right to request a conference with a public official.[6]
Putting aside the question of whether the "waiver” document effectively apprised Mrs. Lopez of her right to contest the removal of the children, it is clearly not a waiver of any right to a preference she may have under subdivision 3 of section 383. It was signed at a time when the R. twins were not free for adoption, and made no mention of a possible right to adopt. A waiver must be an intentional relinquishment of a known right, narrowly construed, and limited to its specific terms. (Werking v Amity Estates, 2 NY2d 43; Matter of Mendleson, 46 Misc 2d 960.)
Moreover, section 400 of the Social Services Law cannot be the exclusive remedy to which a foster parent is relegated when an agency removes a child from a foster home. The issue of child custody should be decided only by a court after an evidentiary hearing. (Berger v Berger, 45 AD2d 1000; Matter of Antonoff v Antonoff, 44 AD2d 577; Nestel v Nestel, 38 AD2d 942; 2 Foster and Freed, Law and the Family, § 29:29.) A conference with a welfare center official followed *441 by an administrative hearing in which the only parties are the foster parents and the Department of Social Services, where the foster parents need not be represented by an attorney, and where the child and the natural parents are not represented, could well be an unsuitable procedure for determining whether or not a child should remain in a foster home.
In addition, as was pointed out in Matter of Ida Denise W (77 Misc 2d 374), when administrative remedies are finally exhausted, court review is by way of an article 78 proceeding before the Supreme Court in Special Term, Part I, a part of that court without expertise in questions of child custody.
The time involved in taking the matter before the Commissioner of Social Services for internal review and then to court via an article 78 proceeding may also make this procedure inappropriate and prejudicial to the child involved. In child custody matters, time is often of the essence.
Section 400 of the Social Services Law was enacted in 1967, before the passage of subdivision 3 of section 383 of the Social Services Law which recognized foster parents as a potential adoptive resource for foster children. It was enacted before section 392 of the Social Services Law, under which foster parents are or may be made parties to foster care review proceedings. It must be assumed that the Legislature, when it amended the Social Services Law to give rights to foster parents intended that these rights were to be effectuated. (McKinney’s Cons. Laws of NY, Book 1, Statutes, § 96.)
Indeed, the courts have recognized the rights of foster parents, as parties interested in the welfare of a child, to initiate custody proceedings. (Matter of Reed v Daniels, 45 AD2d 980; Matter of Samantha S., 80 Misc 2d 217; Anonymous v New York Foundling Hosp., 61 Misc 2d 137. See also 7A Weinstein-Korn-Miller, N. Y. Civ. Prac., § 7002.14.)
In the case at bar, the court finds that there has been no waiver by Mrs. Lopez of her right to a preference. However, in weighing the best interests of the children, the court notes that Mrs. Lopez neither asked for administrative review of the agency’s decision to remove the children nor did she initiate legal action to regain custody. She waited until this proceeding was commenced before expressing her interest in adopting the children.

(b) Marital Status

In considering the right of Mrs. Lopez to a preference *442 pursuant to subdivision 3 of section 383 of the Social Services Law, it is clear that this court may not grant a preference to Mrs. Lopez if she is married and living apart from her husband. Subdivision 3 of section 383 of the Social Services Law states that "any adult husband and his wife and any adult unmarried person” who otherwise meet the statutory requirement may apply for the adoptive placement of their foster child.[7] Unless Mrs. Lopez has become divorced from her husband, or they have become reconciled and apply together, Mrs. Lopez would not be eligible for the statutory preference. Mrs. Manco, on the other hand, is a widow and is therefore an "unmarried person”. She has not been a foster parent for two years and is not entitled to a preference, but she is not disqualified by reason of her marital status from consideration as an adoptive resource.

(c) Sufficiency and Timeliness of Application for Statutory Preference

Subdivision 3 of section 383 of the Social Services Law provides that foster parents "may apply” to the agency for placement of their foster child with them for purpose of adoption. The statute is silent as to what shall constitute an application and when it must be made.
It is not necessary to interpret the statute as requiring a formal application. Plainly, however, some affirmative action is contemplated. Mrs. Lopez’ statement in court that she wished to adopt the R twins appears to be the only action she has taken. Her statement, standing alone, must be measured against her failure to pursue her rights both before and during this proceeding.
There is the further question of whether Mrs. Lopez’ rights as a foster parent who has had custody of foster children for more than two years can survive a period of separation and be revived after the children have been removed from her home.
This question was considered in Matter of Anonymous (77 Misc 2d 323), where the Surrogate in Nassau County, in an adoption proceeding, held that the failure of the foster parents to take affirmative steps for an infant’s adoption while he was in their care deprived them of their statutory preference. However, in Matter of Anonymous (supra) the foster child had been free for adoption while he was in the home of the foster *443 family and the foster parents had decided not to adopt the infant, changing their minds some 13 months later.
It cannot be said as a matter of law that a failure to apply for adoption while the foster parent is caring for the child will bar a foster parent in all cases from applying for a preference if the child becomes free for adoption at a later date. The length of time that the child and the foster parents have been separated, the reasons for the separation, the availability and suitability of alternative adoptive placements, and whether or not the child has put down roots in another home are all factors which the court should consider.
The removal of the children from Mrs. Lopez’ home by itself could not operate to defeat her preferential rights to apply for adoption. (See Andrews v Beaudoin, 39 AD2d 1005.) But Mrs. Lopez has failed to act promptly and affirmatively to implement her stated desire to adopt; she has failed to pursue her legal rights in this proceeding; her marital status is uncertain, and considerable time has elapsed since the R. twins have left her home. In addition, the record shows that the boys have made a good adjustment in their new foster home, and that their new foster mother wishes to adopt them.
Accordingly, this court finds that Mrs. Lopez is not entitled to a preference under subdivision 3 of section 383 of the Social Services Law.
Effect of Finding in Adoption Proceeding
Having said all of that, we come now to a consideration of whether our finding will bind the court which hears the adoption proceeding of these two children. If Mrs. Lopez seeks to intervene[8] and assert a statutory preference, should not the adoption court find that the usual rules of res judicata, law of the case, or collateral estoppel apply? Assuming, arguendo, that the requirements for res judicata or collateral estoppel are met (see Carmody-Wait [2d ed], New York Practice, §§ 63:196, 63:204), why should a foster care review under section 392 of the Social Services Law be a proceeding so different in kind and so narrow in purpose that no matter how thoroughly an issue has been litigated, perhaps at great expense to parties and court, it is subject to relitigation in a *444 subsequent action determining status?[9] This is the view set forth in Matter of Carla L. (supra) but this court believes it to be an unnecessarily restrictive interpretation of the law which need not be followed. (See Matter of Fine v Fine, 65 Misc 2d 87.) Otherwise, the foster care review proceeding, designed to insure permanent homes for children expeditiously, may turn out to be yet another stumbling block in the path of the rights of the child.
In view of the foregoing, the court hereby orders that Richard and Dionisio R. be placed for adoption in the home of Mrs. Frances Manco and that the agency and the Commissioner of Social Services proceed forthwith to expedite the adoption of said infants.

. Section 111 of the Domestic Relations Law requires only the consent or surrender of the natural mother for adoption of an out-of-wedlock child, and the infants’ mother had signed a surrender on May 11, 1973. However, in deference to Stanley v Illinois (405 US 645), the agency apparently did not consider the children free for adoption until the surrender of the natural father had been obtained as well.

. The other three dispositions are: continuation of foster care, return of the child to his parent, or a direction that the agency institute legal proceedings to free the child for adoption.

. The Court of Appeals upheld the right of an agency to remove a four-year-old child from foster parents who had cared for her since birth because the foster parents had become too "emotionally involved” with the child. For criticism of this decision, see Foster and Freed, Children and the Law (2 Family L. Q. 40, 54-56); Katz, Foster Parents versus Agencies: A Case Study in the Judicial Application of "The Best Interests of the Child Doctrine” (65 Mich L Rev 145).

. Chapter 1080 of the Laws of 1969. A further amendment in 1972 gave foster parents who have had continuous care of a child for more than 24 months the right to intervene in any proceeding involving custody of the child. (L 1972, ch 645.) (See also Social Services Law, § 383, subd 5; § 384 subd 3; § 374, subd 1-a; § 392, subd 7, par M.)

. Section 400 of the Social Services Law provides that the Commissioner of Social Services may remove a child placed in a family home and any person aggrieved by such decision may request a review by the Department of Social Services and shall be given an opportunity for a fair hearing.

. Letter from Catholic Guardian Society to Mrs. Lopez dated February 6, 1974, countersigned by Mrs. Lopez.

. Cf. section 110 of the Domestic Relations Law, governing adoptions.

. See note 4.

. Under the present cumbersome statutory scheme, adoption is the status action which follows a determination under section 392 of the Social Services Law (subd 7, par [d]). A proceeding to terminate parental rights under either section 384 of the Social Services Law or the Family Court Act (art 6, Part 1) is a status action which must precede adoption after a determination under section 392 of the Social Services Law (subd 7, par [c]).