Joseph A. Suozzi, J.
By this writ, the petitioners, who are foster parents, seek the return of a four-year-old child who was placed with them for prospective adoption by the Nassau County Department of Social Services (hereinafter "the department”), to whom the natural parents had surrendered custody. The child was placed with them on March 14, 1975 after the petitioners had been approved as adoptive parents following investigation and observation over a protracted period. This child remained in their care, under periodic supervision and review by a caseworker, until December 11, 1975 when he was removed.
The removal of the child followed an investigation of an incident which occurred on December 5, 1975 and was reported to the department on December 8. The reported incident involved an alleged severe beating of the child by the foster mother, who allegedly had inflicted massive bruises and welts on the child’s back and buttocks and thigh area. A caseworker from the protective services division of the department investigated the report on the evening of December 8 and the caseworker who had been supervising the child’s care also investigated it the following day. According to the reports of these caseworkers, contained in the confidential files maintained by the department, the decision to remove the child from the petitioners’ custody was made on December 9 and implemented on December 11 before the investigation initiated by the department had been completed.
In removing the child the department also made known the withdrawal of its consent to the adoption of this child by the petitioners and indicated that it would not under any circumstances consent to the adoption of this child and presumably of any other child by these petitioners. As of December 11, 1975 the adoption papers had been filed with the Family Court and on the basis of the department’s consent, the court’s approval was expected very shortly.
*275 This court conducted a hearing on the writ, and issued a memorandum decision dated January 29, 1976. After reviewing all the evidence, the court in its memorandum stated that "the permanent removal of the child based on this episode alone was an excessive reaction by the Department, and exceeded the bounds of reasonableness”. In its memorandum, the court also addressed itself to the question of the validity of the department’s avowed intention to forever withhold its consent to the adoption of this child by these petitioners. In the court’s words, a resolution of this question was necessary "because the question of the child’s removal has been inextricably interwoven with the question of the child’s long term status” (see, also, Matter of Fitzsimmons v Liuni, 51 Misc 2d 96, revd on other grounds 26 AD2d 980). After reviewing all of the testimony and other evidence adduced at the hearing, the court in its memorandum stated that the department’s decision to withhold their consent to the adoption of this child by petitioners was based, in large part, on certain inferences drawn by, and certain feelings of various agents of the department; and that these feelings and inferences "may not have a factual basis”. Nevertheless, before making a determination in this proceeding as to the long term status of this child, the court directed that a fair hearing be held by the State Department of Social Services pursuant to section 400 of the Social Services Law to review the county department’s decision to permanently remove this child from the foster home and to withdraw its consent to the adoption of the child by petitioners. The purposes of this section 400 hearing were (1) to afford petitioners, who were clearly aggrieved persons within the contemplation of this section as disclosed by its language and legislative history, an opportunity to be heard, (2) to afford the department an opportunity to avail itself of the results of its investigation, which presumably continued after the child’s removal from the foster home and (3) to afford the department the opportunity to make a part of the record such other facts and expert opinions, if any, in support of its refusal to consent to this adoption which would then be incorporated in the written decision of the State Department of Social Services to be made after the hearing. The determination of the habeas corpus proceeding was held in obeyance pending receipt by the court of the decision of the State Department of Social Services and the stenographic transcript of the fair hearing. A short form order was signed to this effect on January 29, 1976.
*276 A fair hearing pursuant to section 400 of the Social Services Law was held thereafter. On August 18, 1976 the State Department of Social Services affirmed the county department’s determination to remove the child from the foster home and to withhold its consent to adoption of the child by the foster parents. Shortly thereafter the court received a copy of the decision of the State Department of Social Services and a stenographic transcript of the fair hearing. On September 16, 1976 all of the interested parties appeared before the court — the State Department of Social Services designated the Nassau County Attorney to appear in its behalf — to make their final arguments regarding the ultimate disposition of this habeas corpus proceeding.
Before making a substantive determination in this habeas corpus proceeding, the court will initially deal with a procedural point.
Section 400 of the Social Services Law provides:
"§ 400. Removal of children.
“1. When any child shall have been placed in an institution or in a family home by a commissioner of public welfare or a city public welfare officer, the commissioner or city public welfare officer may remove such child from such institution or family home and make such disposition of such child as is provided by law.
"2. Any person aggrieved by such decision of the commissioner of public welfare or city welfare officer may appeal to the department, which upon receipt of the appeal shall review the case, shall give the person making the appeal an opportunity for a fair hearing thereon and within thirty days render its decision. The department may also, on its own motions, review any such decision made by the public welfare official. The department may make such additional investigation as it may deem necessary. All decisions of the department shall be binding upon the public welfare district involved and shall be complied with by the public welfare officials thereof.”
When the administrative remedies under this section are exhausted, court review is available by way of an article 78 proceeding in the Supreme Court (Matter of Dionisio R, 81 Misc 2d 436; Matter of Ida Denise W, 77 Misc 2d 374). However, it is the court’s view that petitioners herein are not obligated to institute a new and separate article 78 proceeding herein to review the decision of the State Department of Social Services dated August 18, 1976.
*277 Section 400 of the Social Services Law is not the exclusive remedy to which a foster parent is relegated when an agency removes a child from a foster home (Matter of Dionisio R, supra). It has long been held that statutes granting the discretionary power to authorized agencies to remove children from homes where they are placed or boarded "do not and cannot affect the equitable powers of. the court to arrange for custody with a view to the best interests of the child” (Matter of Mary I v Sisters of Mercy, 200 Misc 115, 121-122) and that this power is inherent in the Supreme Court and may not be abrogated by statute (People ex rel. Riesner v New York Nursery and Child’s Hosp., 230 NY 119, 124; Matter of Jewish Child Care Assn. [Sanders], 5 NY2d 222; Matter of Kurtis v Ballou, 33 AD2d 1034; Matter of Mack, 81 Misc 2d 802).
In People ex rel. Converse v Derrick (146 Misc 73, 77-78) the court stated: "The State of New York stands in relation of parens patriae to minor children in the State, and representing the State, it is the function of the Supreme Court to determine the custody of such minors, and such determination is to be based solely on the welfare of the minors. This power of the State and function of the Supreme Court evidently transcends legislative action and contract between individuals. [Citing cases.] This office of the Supreme Court descends from King to Chancery and from Chancery to the Supreme Court of this State. Born in a time when the question of custody could be changed on the misbehavior of parents or of guardians chosen by parents, this power must still be available even in these days of social service organizations and welfare officers so that errors of heart or errors of judgment on the part of officials, as well as misbehavior by parents and by guardians can be remedied by the court. Such errors and such misbehavior, though seldom present in the care of a child, must necessarily occur so long as human nature remains in its present state”.
Accordingly, since this case was properly instituted by a writ of habeas corpus, the court is of the view that it may proceed to make a final determination in the matter. Moreover, it is to be noted that the fair hearing conducted herein under section 400 of the Social Services Law, was conducted pursuant to directive of this court and not by virtue of any act of the aggrieved petitioners and that the purpose of the fair hearing was to adduce any additional facts which could help the court in its determination. At all times, and particularly *278 in its memorandum decision dated January 29, 1976, this court made it clear that it had reserved the right and was prepared to make the ultimate determination of the issues raised in this habeas corpus proceeding, after the fair hearing was concluded.
The court now turns to the merits of the proceeding.
The court has reviewed the stenographic transcript of the fair hearing and the decision rendered thereafter by the State Department of Social Services. It is clear to this court from a review of these papers that no new facts or evidence were submitted at the fair hearing which would change the initial impressions of the "court contained in its memorandum decision dated January 29, 1976. Indeed, at the oral argument of this matter on September 16, 1976 none of the interested parties contended that any significantly new evidence had been adduced at the fair hearing.
Accordingly, the court holds that the decision of the Nassau County Department of Social Services to remove the child from the foster home and to withhold its consent to the adoption of this child by petitioners was unwarranted on this record.
While apparently conceding the jurisdiction of this court to review the department’s decision to remove the child from the foster home, respondents contend that this court has no power to review the department’s decision to withhold consent to an adoption of the child by petitioners. In this regard, respondents have cited to the court’s attention the case of Matter of Fitzsimmons v Liuni (51 Misc 2d 96, supra). The court has read the Liuni case and respectfully concludes that it does not support respondents’ contention on this issue. In Liuni the Commissioner of Public Welfare of Ulster County had placed a four-year-old child in a foster home for boarding care. Several years later the commissioner advised the foster parents that an adoptive home had been found for the child. The commissioner also rejected the foster parents’ request to adopt the child. The commissioner demanded a return of the child but the demand was refused. The commissioner then obtained a writ of habeas corpus and the matter was referred by the Supreme Court to the Family Court for trial. The Family Court in its decision in Matter of Fitzsimmons v Liuni (supra, p 109) ruled that the feasibility of legal adoption was "a relevant factor in a complete appraisal of the child’s welfare”. In Liuni, the appropriate agency had refused to approve of an *279 adoption of the child by the foster parents. With regard to its powers, the Family Court in Liuni then stated (p 112): "the court’s power to approve or disapprove of an adoption to which an authorized agency has given its consent is not tantamount to nor so broad as to include the power to make the selection of the foster parents for the agency or to compel the agency to consent to an adoption by foster parents of which it disapproves.”
However, respondents herein have neglected to focus on another statement made by the Family Court in Liuni at page 112: "If the Commissioner is arbitrary or capricious in withholding his consent to the Liuni’s application for adoption of this child, or is guilty of an abuse of discretion, the Liunis may have a remedy through a proceeding against body or officer under article 78 of the CPLR, but if so, such remedy must be sought in the Supreme Court (CPLR 7804, subd. [b]).”
By the proceeding herein, no matter what label is annexed thereto, petitioners, the foster parents herein, have effectively asked this court (i.e., the Supreme Court) to review the decision of the Nassau County Department of Social Services to remove the child from their custody and to withhold its consent to the child’s adoption by petitioners. This proceeding was instituted and has always remained in the Supreme Court.
Accordingly, the court is of the view that it has the power to review the department’s refusal to consent to the adoption contemplated by petitioners. Upon that review it is the court’s holding that the department’s refusal was unwarranted under the circumstances present herein.
Accordingly, the writ is, therefore, sustained, and the child is directed to be returned to petitioners’ custody. The adoption proceeding instituted by petitioners may proceed.
In view of the fact the child has been away from the foster home for approximately 10 months, the department is directed to implement appropriate steps to insure that the transition back to the foster home be made gradually and be preceded by adequate preparation of the child. Should respondents decide to appeal the determination herein, the court directs that the department implement a schedule of visitation between the child and the petitioners during the course of the appellate review.