OPINION OF THE COURT
Donald J. Corbett, Jr., J.
This proceeding was commenced by service of an order to show cause by the Monroe County Department of Social Services requesting a foster care status review of two minor children, pursuant to section 392 of the Social Services Law.
The children were judicially declared to have been neglected children by an order of the Family Court. Thereafter, each parent voluntarily executed a surrender of guardianship and custody instrument, which transferred guardianship of each child to the Commissioner of Social Services, and authorized the commissioner to place the child in an adoptive home and to “otherwise assume all parental responsibilities for such child”. In addition, the instrument authorized and empowered the agency to “consent to the adoption of said child in my place and *369 stead and with the same force and effect as though I personally gave consent at the time of the adoption”. The parents also executed an adoption religious preference affidavit, with the father stating that the children could be placed “with indifference to religion”, and the mother stating that they could be placed “with religion a subordinate consideration”.
The children were subsequently placed in foster care by the commissioner. At the time of the commencement of this action the children were residing with Robert and Linda Petty. They had been placed in two other foster homes prior to their placement with the Pettys in July, 1978.
During November, 1978, Mr. and Mrs. Petty requested the opportunity to adopt the children, and an adoption study was commenced. Upon completion of the study, the commissioner executed a consent for the adoption of Michael and Eric by the Pettys. The commissioner has since revoked the consent.
On September 4, 1980 a case conference, initiated by the adoption staff, was held to re-evaluate the commissioner’s consent. The revocation of consent to adopt was the result of the case conference. Although the revocation was dated September 8, 1980, the children remained with the Pettys until October 23, 1980 when they were removed.
At this time, Mr. and Mrs. Petty request the return of the children; an order continuing the children in foster care with them; and the continuation of the adoption process pursuant to section 392 (subd 7, par [d]) of the Social Services Law which provides “that such child be placed for adoption in the foster family home where he resides or has resided”.
The children were one and two years of age when they were surrendered by their parents. They have remained in the foster care system for more than 50% of their lives. They are entitled to and need permanency and security in their lives.
This case abounds with contradictions, value judgments made upon such intangibles as “my own feelings”, *370 an anonymous letter, conflicts over religious beliefs, untrusting attitudes and the possibility of the foster parents’ separation. The testimony adduced in this case reveals conflicting reports made by the caseworker at the time of foster care certification and later by the adoption staff in conjunction with the proposed adoption.
When Mr. and Mrs. Petty requested foster home certification, the Home Finding Department of the Monroe County Department of Social Services found their home to be satisfactory. The report specifically stated that the atmosphere is warm, cheerful and relaxed, and that their parenting skills were adequate. “I recommend this home for placement of children between the ages of 0 and 11 years of age.” The adoption department staff, on the other hand, as a result of their home study found:
“This is a very controlled, rigid, manipulative couple. I feel they have given Michael and Eric a great deal of time spent with academic learning. I worry about what the future holds for these boys, living with parents who are so narrow-minded. They express verbally one way of living, but actions do not confirm it. I worry that we are not giving these bright, healthy young boys a more normal atmosphere in which to grow and develop to their fullest potential.
“I question the quality of Linda’s and Bob’s marriage * * * there have been many things that I have become concerned with.
“Number one was their religious belief which is different from Michael and Eric’s which has caused some confusion to Michael ***
“Michael and Eric are delightful boys, and I feel that they should be placed in a more normal setting away from angry, rigid people who have painful pasts that they choose not to discuss during their adoption home-study.”
The two reports (foster care and adoption) are diametrically opposed. Moreover, despite the negative adoption staff report, the commissioner executed a consent for adoption of the children by the Pettys.[1]
*371 Unfortunately, the children must remain in foster care. They are surrendered children in the custody and guardianship of the Commissioner of Social Services. The crucial decision to be made is which foster home and who the proposed adoptive parents should be. The decision, however, has been delegated to the commissioner, who makes it after a review of all of the relevant facts and circumstances in each case.
Although this case is before the court pursuant to section 392 of the Social Services Law, the real question presented is whether or not the court has jurisdiction to review the commissioner’s decision to revoke his consent to adopt.
The Family Court is a creation of statute, and as such its jurisdiction is limited. It has only such jurisdiction and powers as the Constitution and as the law of this State expressly grant to it. (NY Const, art VI, § 13, subd c; Family Ct Act, § 115; Matter of Borkowski v Borkowski, 38 AD2d 752; Clune v Clune, 57 AD2d 256, 257; Matter of Mouscardy v Mouscardy, 63 AD2d 973, 975.) It does not possess equity jurisdiction, and in adoption proceedings has concurrent jurisdiction with the Surrogate’s Court. Recognizing that the jurisdiction of the Family Court is in derogation of the common law, its jurisdiction must be strictly construed.
In a proceeding commenced pursuant to section 392, this court is authorized to enter an order of disposition: “(a) directing that foster care of the child be continued; or (b) (not germane herein) (c) (not germane herein) (d) in the case of a child whose guardianship and custody have been committed to an authorized agency by an order of a surrogate judge of the family court or by surrender instrument, directing that such child be placed for adoption in the foster family home where he resides or has resided or with any other person or persons.” (Social Services Law, § 392, subd 7, pars [a], [d].) Thus, this court is authorized to order that the children be replaced with the Pettys. To exercise the authority under section 392 (subd 7, par [d]) of the Social Services Law, however, would involve another move for the children who have at this time already been in four foster place *372 ments, with the resulting trauma that such an upheaval would cause, without the certainty that the commissioner would execute another consent to the adoption voluntarily. In fact, the testimony herein strongly indicates that such consent would not voluntarily be given.
If the commissioner refused to replace the children pursuant to court order, then relief could be requested under the authority of subdivision 11 of section 392 of the Social Services Law, to “enter an order committing the guardianship and custody of the child to another authorized agency”. This authority would, if exercised by this court, accomplish the replacement of the children, and raise the possibility that another agency may be willing to execute the necessary consent for adoption. There is no question that this court has the authority and the power to enforce an order directing the commissioner to replace the children, an action which this court has indicated it will not exercise. To direct the guardianship to another agency would, therefore, be ’for the sole purpose of obtaining the consent of that agency for the adoption. In Rochester, New York, there exist only two other authorized agencies, both of whom have financial arrangements with the Commissioner of Social Services, and indeed, act in concert with the Department of Social Services on a daily basis. Therefore, in a community of this size, the exercise of this authority is not a viable alternative.
Subdivision 11 of section 392 further provides that the court “may make any other order authorized pursuant to section two hundred fifty-five of the family court act.” Section 255 of the Family Court Act grants to the court the power to direct the commissioner to perform certain acts or duties, including, ostensibly, the adoption consent herein. However, appellate courts have consistently limited the application of section 255, thus, confirming that the Family Court’s jurisdiction is not only limited but must be strictly construed. (Matter of Lorie C. v St. Lawrence County Dept, of Social Servs., 49 NY2d 161; Matter of Carpenter, 94 Misc 2d 908; Matter of Dennis M., 82 Misc 2d 802; Matter of Currier v Honig, 50 AD2d 632; New York City Housing Auth. v Miller, 89 Misc 2d 141.) *373 Therefore, absent clear and unambiguous language in the statute authorizing the court to direct the commissioner to consent to the adoption, this court is without jurisdiction to order the same under section 255.
It should be noted that subdivision 3 of section 383 of the Social Services Law grants a “preference and first consideration” to an application for adoption placement to foster parents who have cared for a child, eligible for adoption, continuously for a period of 18 months or more. The authority to determine the “propriety of [the] adoption of [the] child”, however, remains with the Family Court (i.e., to approve or disapprove the adoption only). This section does not vest the Family Court with subject matter jurisdiction to review the commissioner’s refusal to consent to adoption.
In a well-reasoned opinion, the Family Court of Ulster County [2] considered the issues of (1) the power of the Family Court to approve an agency adoption without the commissioner’s consent and (2) the procedure for review where the commissioner has refused to grant his consent. The court stated: “If the Commissioner is arbitrary or capricious in withholding his consent to the Liuni’s application for adoption of this child, or is guilty of an abuse of discretion, the Liunis may have a remedy through a proceeding against body or officer under article 78 of the CPLR, but if so, such remedy must be sought in the Supreme Court (CPLR 7804, subd. [b]).” (Matter of Fitzsimmons v Liuni, 51 Misc 2d 96, 112, revd on other grounds 26 AD2d 980.) On the issue of jurisdiction of the Supreme Court to review a commissioner’s refusal to execute an adoption consent, one court has held: “Accordingly, the court is of the view that it has the power to review the department’s refusal to consent to the adoption contemplated by petitioners. Upon that review it is the court’s [finding] that the department’s refusal was unwarranted under the circumstances pres *374 ent herein.” (Matter of Mundie v Nassau County Dept, of Social Servs., 88 Misc 2d 273, 279.)
It is, therefore, the opinion of this court that subject matter jurisdiction to review the commissioner’s decision, to order the commissioner to execute a consent, or to enforce such order is lacking. If the Pettys feel the commissioner’s decision to revoke his consent to their adoption was arbitrary, capricious, or unfair, their remedy is to seek review of the commissioner’s decision via an article 78 proceeding in the Supreme Court.[3] In the instant case, given the conflicting testimony and reports, a decision by a court of competent subject matter jurisdiction would seem to be in the best interest of all parties. Review may be desired to determine if a factual basis exists for such feelings and inferences. This case clearly illustrates the need for specific, detailed and written criteria to be used in evaluating parents and home settings for both proposed foster parents and proposed adoptive parents. Without such standards, objectiveness becomes uncertainty and confusion replaces clarity.
Absent subject matter jurisdiction to direct and compel the commissioner to execute the necessary consent instrument or to enforce Such an order if made, this court, for the reasons noted herein, directs that the children continue in the foster care home in which they now reside. Additionally, an order of protection shall be entered directing that the children not be removed from the foster home in which they now reside without a written order upon notice to the parties herein by this part of court. Pursuant to subdivision 10 of section 392 of the Social Services Law this court will accept continuing jurisdiction over this matter.
Should the respondents commence an article 78 proceeding, upon a final determination of the issue, this court will reschedule and rehear all issues immediately. In addition, should the respondents seek appellate review of this decision or institute proceedings in the Supreme Court, the department shall implement a schedule of *375 visitation between the children and the Pettys during the course of such review or appeal. The visitation shall be every other weekend, from Saturday at 9:00 a.m. to Sunday at 7:00 p.m.
Family Courts need to have jurisdiction over all stages of adoption proceedings, not just over the finalization of adoptions, for without it, dual proceedings are necessary with the increase loss of time before final determinations are made. This is especially sad, since the concept of “time” is much more important to children than adults. However, such jurisdiction can only be bestowed upon Family Courts through appropriate legislation. This is an issue that the Legislature, in their wisdom, should address.

. During the testimony of the adoption caseworker, it was noted that the commissioner does not personally exercise any independent evaluation of adoption consents or adoption revocations. No reports are furnished him. He merely signs whatever documents the adoption staff furnishes his office.

. A 1966 opinion by Judge Hugh R. Elwyn, Ulster County. The habeas corpus petition referred to the Family Court from the Supreme Court involved a proposed adoptive child’s custody, and the refusal of the Commissioner of Social Services to execute a consent to adoption.

. CPLR article 78 — Proceeding against body or officer. Proper parties, hearing procedure, and appellate review is fully provided.