OPINION OF THE COURT
Charles J. Tejada, J.
This proceeding was commenced by a writ of habeas corpus filed by Little Flower Children’s Services, the petitioner, to regain the physical custody of Elita C., also known as Katherine C., hereinafter referred to as Elita. Elita is a foster child whose legal custody and guardianship has been committed to the Department of Social Services of the City of New York, and to the petitioner, an authorized foster care agency, pursuant to this court’s finding of neglect against the child’s nature mother. The petitioner, in turn, placed Elita in temporary short-term foster care with the respondent foster parents, Andrew C. and Sheila C.
JURISDICTION
The first issue the court will address is whether it has jurisdiction to reach a determination in this matter. The foster parents contend that the petitioner may not commence this writ of habeas corpus to have the child removed from their home and returned to the natural mother. They argue that the "petitioner is seeking * * * to avoid the respondent foster parents’ participation in hearings, both court and administrative, which are guaranteed them under the laws of the State of New York, to wit: Section 383 (3) of the Social *673 Services Law, Section 1055 of the Family Court Act, NYCRR [sic] and Special Procedure No. 5 designed to protect their interests and the best interests of the foster child.” Further, they allege "that pursuant to Section 1055 of the Family Court Act * * * the petitioner was mandated to serve us with notice of an extension of placement for [the child] 60 days before the expiration of her court ordered placement * * * but [we] have never been so served” and that "pursuant to Section 383 of the Social Services Law and NYCRR the agency must notify foster parents in writing ten days in advance of any removal. This was not done. Further said notice must advise us of our right to request a conference with the Social Services Department which must be scheduled within ten days of the receipt of the request at which we may be represented by counsel * * * that at the hearing we, as foster parents, had to be told the reasons for the child’s removal from our home and given the opportunity to present reasons why the child should not be removed * * * that a decision must be rendered” within five (5) days and that any removal was automatically stayed pending the outcome of the conference * * * that we had further rights after that to court review pursuant to Article 78 CPLR”. In essence, the foster parents argue that this court lacks jurisdiction because they were denied an administrative hearing on the issue of removal pursuant to section 400 of the Social Services Law, and service of process for a proceeding pursuant to section 1055 of the Family Court Act.
This court is not persuaded by the pleadings that it lacks jurisdiction and no evidence challenging jurisdiction was presented by the foster parents. Further, this court finds the foster parents’ arguments totally lacking in merit and unsupported by statute or case law.
It is well settled that the judicial remedy afforded foster parents for an alleged denial of administrative procedural rights is to seek a judicial review of that denial through a CPLR article 78 proceeding. That fact was made indisputably clear by the Court of Appeals in its decision in People ex rel. Ninesling v Nassau County Dept. of Social Servs. (46 NY2d 382). The court stated (supra, at 386) that: "Pursuant to the statutory scheme created by the Legislature (Social Services Law, § 400), a foster parent aggrieved by a determination of the Social Services Department to remove a child from a foster home may request an internal review of the determination within the department in the form of a 'fair hearing’. Upon the exhaustion of this administrative remedy, an ag *674 grieved foster parent may seek judicial review of the agency’s determination in the Supreme Court through the vehicle of an article 78 proceeding. * * * The administrative and judicial review afforded an aggrieved foster parent under this statutory scheme * * * provides a sufficient forum for the consideration of the interests of foster children and parents to satisfy the demands of due process.”
The foster parents concede that they are aware of their article 78 rights, although they have chosen not to exercise these rights.
Failure of the foster parents to pursue their administrative and judicial remedies under a statutory scheme they claim applies to them cannot leave the petitioner impotent to carry out its mandated responsibilities as a foster care agency. Also, this court has before it a Family Court Act § 1055 proceeding for extension of placement, wherein the foster parents have appeared. Consequently, the foster parents’ argument that failure to receive notice therein is a jurisdictional bar to this writ of habeas corpus is not only unsupported by statute or case law but also it is not supported by the facts. Moreover, section 651 of the Family Court Act grants jurisdiction to this court to determine writs of habeas corpus and it is well settled that writs of habeas corpus are the appropriate judicial remedy in cases brought to remove foster children from foster parents. (Matter of Spence-Chapin Adoption Serv. v Polk, 29 NY2d 196; Matter of Jewish Child Care Assn. [Sanders], 5 NY2d 222.)
PARENTAL FITNESS AND THE BEST INTEREST OF THE CHILD TEST
Neither the Family Court Act nor the Social Services Law set forth the standard, burden or order of proof to be applied in habeas corpus proceedings by foster care agencies to return a foster child to the custody of his or her natural parent.
However, it is well settled that in these proceedings the court must make a determination as to the fitness of the natural parent and whether return of the foster child to this parent is in the child’s best interest. (Matter of Kurtis v Ballou, 33 AD2d 1034; Matter of Jewish Child Care Assn. [Sanders], supra, at 230.)
Further, the petitioner seeks an order to transfer custody to the natural mother. The elements for such a court order are articulated in Social Services Law § 383 (1), which states, in *675 part, that: "1. The parent of a child remanded or committed to an authorized agency shall not be entitled to the custody thereof, except * * * in pursuance of an order of a court or judicial officer of competent jurisdiction, determining that the interest of such child will be promoted thereby and that such parent is fit, competent and able to duly maintain, support and educate such child.”
Consequently, Social Services Law § 383 (1) also requires that the petitioner establish that "such parent is fit, competent and able” to care for such child and that "the interest of such child will be promoted thereby”.
With respect to the issue of fitness of the natural mother, the foster parents contend that the natural mother’s past finding of neglect is prima facie evidence of unfitness in this proceeding. If courts were to accept the foster parent’s contention, no child placed in foster care, after a neglect finding was entered against a natural parent, could be reunited with that parent. This development would be contrary to the very essence and purpose of the foster care system.
Under the extensive statutory and regulatory foster care scheme, the legal status foster parents enjoy, with respect to a foster child not freed for adoption, is purposely limited and narrow. Foster parents do not have legal custody and their relationship with their foster child is governed by statute and regulation, since the primary goal of the foster care system is to reunite children with their nature parents and/or family. (Social Services Law § 383 [2]; Smith v Organization of Foster Families, 431 US 816, 845; People ex rel. Ninesling v Nassau County Dept. of Social Servs., supra, at 387-388; cf., Matter of Minella v Amhrein, 131 AD2d 578.)
The Legislature has articulated this policy through Social Services Law § 384-b (1) (a) which states in part that
"(ii) it is generally desirable for the child to remain with or be returned to the natural parent because the child’s need for a normal family life will usually best be met in the natural home, and that parents are entitled to bring up their own children unless the best interests of the child would be thereby endangered;
"(iii) the state’s first obligation is to help the family with services to prevent its break-up or to reunite it if the child has already left home”.
Consistent with this mandate, the Court of Appeals has clearly required that a parent be proven to be presently unfit *676 if he or she is to be denied custody of his or her natural child. In People ex rel. Kropp v Shepsky (305 NY 465, 468), where a mother’s fitness to have custody was at issue, the Court of Appeals reversed a lower court and granted custody to the petitioner mother because "no showing of present unfitness” had been made. Further the court ruled that "in assessing her fitness for the duties of motherhood, that the courts may not weigh too heavily indiscretions of long ago” (supra, at 471).
With respect to the issue of the child’s best interest, it is similarly well settled that, given the context of this proceeding, the focus of this inquiry is on whether the child’s best interest will be promoted if returned to the natural parent. (People ex rel. Ninesling v Nassau County Dept. of Social Servs., supra; Matter of Spence-Chapin Adoption Servs. v Polk, supra; Matter of Jewish Child Assn. [Sanders], supra.)
The petitioner suggested that since this proceeding was similar to a custody proceeding between a parent and nonparent, that the "extraordinary circumstances” test articulated by the Court of Appeals in Matter of Bennett v Jeffreys (40 NY2d 543) should apply to the foster parents.
Specifically, the petitioner argued, supported by the respondent Commissioner of Social Services, that "[T]he Bennett court further held, as between the natural parent and the third party custodial person, that only after a 'judicial finding of surrender, abandonment, unfitness, persistent neglect, unfortunate or involuntary extended disruption of custody, or other equivalent but rare extraordinary circumstances which would drastically affect the welfare of the child’ could the state intervene in 'the right and responsibility of a natural parent to custody of his or her child’ and only on such a finding may the court 'then proceed to inquire into the best interest of the child and to order a custodial disposition on that ground.’ Bennett at 549”.
This court rejects this argument. Foster parents do not have rights similar to parties in a custody proceeding. They may not maintain a custody proceeding concerning a foster child. "[FJoster parents * * * do not have standing to initiate a custody proceeding. Social Services Law § 383 (3) provides only that, 'foster parents having had continuous care of a child, for more than eighteen months * * * shall be permitted * * * to intervene in any proceeding involving * * * custody’ (emphasis supplied).” (Katie B. v Miriam H, 116 AD2d 545, 546 [2d Dept 1986].) The Second Department subsequently reaffirmed its *677 position on this question of law when it affirmed the dismissal of a custody petition brought by former foster parents. (See, Matter of Minella v Amhrein, supra.)
Consequently, the best interest inquiry here is not like that of parties fighting for custody, even where the Bennett "extraordinary circumstance” test applies. In custody proceedings, courts must look to what is in the child’s general best interest. Consequently, factors which would assist the court in determining with which adversary the child will fair better are considered. (Domestic Relations Law § 240; Matter of Lincoln v Lincoln, 24 NY2d 270; Matter of Saunders v Saunders, 60 AD2d 701; Matter of Wright v Wright, 88 AD2d 1008; Matter of Schwartz v Schwartz, 144 AD2d 857.)
Here, the best interest inquiry is limited to the examination of whether the interest of the child is promoted by returning her to her natural mother. "[T]he issue is not, as the [foster parents] would have it, whether one choice of custody or another is better for the child, or, put another way, whether the [foster parents] would raise the child better than would the unwed mother, or which cultural or family background would be best for the child. Least of all is the issue that of comparing the quality and depth of love and affection between the child and those who would compete for its custody. Nor is the issue whether natural parents or adoptive parents make 'better’ parents, whatever that may mean. The power of the State, let alone its courts, is much narrower. Child and parent are entitled to be together, unless compelling reason stemming from dire circumstances or gross misconduct forbid it in the paramount interest of the child, or there is abandonment or surrender by the parent.” (Matter of Spence-Chapin Adoption Servs. v Polk, supra, 29 NY2d, at 198-199.)
Consequently, the petitioner bears the initial burden of proving, in addition to its allegations in the writ of habeas corpus, that the natural mother is fit ■- and that the best interest of the child is fostered by returning her to her natural mother.
On the other hand, the Court of Appeals has directed that "Except where a nonparent has obtained legal and permanent custody of a child by adoption, guardianship or otherwise, he who would take or withhold a child from mother or father must sustain the burden of establishing that the parent is unfit and that the child’s welfare compels awarding its custody to the nonparent. * * * In other words, the burden rests, *678 not, for instance, upon the mother to show that the child’s welfare would be advanced by being returned to her, but rather upon the nonparents to prove that the mother is unfit to have her child and that the latter’s well-being requires its separation from its mother.” (People ex rel. Kropp v Shepsky, supra, at 469.)
Therefore, the respondent foster parent’s burden of proof is to clearly show that return of the child to the natural mother "will operate to its [the child’s] grave detriment” (Matter of Jewish Child Care Assn. [Sanders], supra, 5 NY2d, at 230).
To illustrate further, this proceeding is analogous to a Family Court Act § 1055 proceeding to extend placement. In these matters, the party wishing to extend placement bears the burden of proving that the interest of the child is not fostered by his or her return to the natural parent. (Matter of Belinda B., 114 AD2d 70, 74; see also, Matter of Susan, 124 Misc 2d 443, 446 [This decision specifically rejects the Bennett "extraordinary circumstances” test in an extension of placement proceeding and held that the narrower best interest test applies since "(t)he fact that (the child) is placed with an authorized child care agency brings this case within the ambit of an extensive statutory and regulatory scheme, the initial focus of which is the reunification of the child with the natural parent. This policy is articulated in the statement of legislative findings and intent which prefaces the termination of parental rights statute”].)
FINDINGS OF FACT
Based on the evidence at trial, this court finds that the respondent mother is fit to assume her motherhood responsibilities with respect to Elita and that Elita’s interest would be promoted by placing her in the custody of her mother. The natural mother has complied with the conditions for reuniting with her daughter, set by the petitioner and the respondent Commissioner of Social Services; including remaining drug free, cooperating with the petitioner and the Commissioner of Social Services, insuring that the children went to school and were well cared for and visiting Elita regularly.
Further, the record establishes that from the very beginning of their relationship with Elita, the foster parents have interfered with the petitioner’s stated and legally required goal of working towards reuniting mother and child.
Their activity clearly evidences a concerted effort, conscious *679 or otherwise, to alienate Ehta from her mother and interfere with any bonding to her mother.
CONCLUSION
The sole argument raised by the foster parents against Elita’s return is that bonding has developed between them and Elita. They have presented no evidence that the needs of Elita are such that she would suffer other than the expected short-term distress if returned to her natural mother. The foster parents’ love and affection has grown too deep and their failure to keep proper distance at all costs to themselves does not translate into an inchoate right to adopt. (Matter of Spence-Chapin Adoption Servs. v Polk, supra.) Moreover, their love and affection does not translate into what is in the child’s best interest.
Based on all the above, the removal of Elita C. from the home of the foster parents and the return of Elita to the custody of the mother is ordered, forthwith.