In the Matter of FRANK M. SPATH, Respondent, v PETER WILLIS et al., Appellants.

Third Department, January 3, 1980

APPEARANCES OF COUNSEL

*Thomas B. Oakes (Sinon O'Neil* of counsel), for Broome County Department of Social Services, appellant.

*Lombardi, Reinhard & Walsh (Richard P. Walsh, Jr.,* of counsel), for respondent.

## OPINION OF THE COURT

MAHONEY, P. J.

On October 6, 1976, a patient at the Binghamton Psychiatric Center gave birth to a female child, Catrina. The mother voluntarily surrendered the child for adoption to the Broome County Department of Social Services (department). On July 25, 1977, the child was placed with Peter Willis and his wife as adoptive parents. Almost immediately following such placement, the adoptive parents experienced marital difficulties, separated and placed the infant with paid baby-sitters, petitioner Frank Spath and his wife, who undertook custodial supervision. A proceeding was commenced in Broome County on January 12, 1978, pursuant to section 651 of the Family Court Act, for return of custody of the child to the department. Thereafter, a bizarre series of stays and orders of transfers occurred, including an application by Spath for custody, that prevented disposition of this sensitive matter. Finally, this court, on March 17, 1978, on its own motion, directed the Family Court of Greene County to determine Spath's application for custody no later than March 24, 1978. A hearing was commenced on March 21, 1978 which concluded with a stipulation by the parties authorizing a study to be conducted by the Family and Children's Society of Albany County to determine if the Spaths qualified as adoptive parents. After such study was made, a further hearing was held which terminated with a finding by the Family Court Judge that it was in the best interests of the child that temporary custody be given to the Spaths and, further, that the department allow the Spaths "the right to petition for the right to adopt the said child". The department appealed.

Since the adoptive parents, the Willises, were unable to discharge their obligation to the infant, the department had not only the right but the duty to petition for return of the infant (Family Ct Act, § 651), and Special Term should not have stayed that proceeding by show cause order in connection with an application by the Spaths for custody, particularly since the Spaths had only physical or *de facto* custody, rather than legal custody of the child. Nevertheless, the matter was ordered to be heard in Family Court of Greene County and, in our view, absent the afore-mentioned stipulation, should have been concluded with a determination directing that the infant be returned to the agency to which the natural mother had surrendered the child for adoption. While

we recognize that in those instances where a contest for custody of an infant is between parents, parents and nonparents, parents and agencies or even nonparents and agencies, as here, the State may, acting as *parens patriae,* adjudicate such a controversy for the protection of the child, nevertheless, the State should withhold the application of its dispositive powers where, as here, not to do so would provide incentives to those likely to take the law into their own hands (see *Matter of Bennett v Jeffreys,* 40 NY2d 543, 550).

The Spaths began their relationship with Catrina by acting as paid baby-sitters and gradually enlarged their *de facto* custodial rights as the Willises surrendered theirs. The final residence of an unfortunate child should not be determined by an investigation, no matter how thoroughly conducted, that only inquires into the eligibility of prospective parents who assumed custody by chance and fails to take into account the rights of the only legal custodian of the child, the Broome County Department of Social Services. Adoption proceedings are difficult enough when conducted within the statutory scheme legislatively created to provide a forum for the consideration of the interests of all parties articulated from positions or postures that lend some degree of legitimacy to their claims. Here, the Spaths are neither foster parents nor adoptive parents. No cognizable principle of law, statutory or otherwise, exists that supports or credits their right to adopt Catrina. We cannot countenance an adoption proceeding concerned with the best interests of a child when the infant is not in the custody of either the agency to which it was surrendered, or foster parents, or adoptive parents, but, instead, in the *de facto* custody of a family which has never been investigated by the agency statutorily charged with that responsibility. (Cf. *People ex rel. Ninesling v Nassau County Dept. of Social Servs.,* 46 NY2d 382, 386-387.) If the Spaths are to be considered as prospective adoptive parents, an agency investigation should proceed with the purpose of determining their suitability as parents in terms of age, race and religious compatibility with the natural parent. In this connection, we note that the natural mother, in a document entitled "Religious Statement", expressly directed that her child be placed with adoptive parents of the Roman Catholic faith.

The order appealed from should be reversed, temporary custody of the Spaths should be revoked and Catrina should be returned to the Broome County Department of Social

Services which may place the infant with the Spaths as adoptive parents if the type of investigation outlined above indicates that such a placement is in Catrina's best interests. In proposing this disposition, we are not unmindful that we directed a hearing in this matter. However, our duty as *parens patriae* to make sure that contested custody proceedings should always be conducted in a forum and in a manner that promotes the best interests of the child, together with the further development of the law in this area by the Court of Appeals *(People ex rel. Ninesling v Nassau County Dept. of Social Servs., supra),* compels us to the view that the proceeding below should be annulled.

The order should be reversed, on the law and the facts, without costs, the petition dismissed and the matter remitted to the Family Court of Greene County for further proceedings not inconsistent herewith.

KANE, J. (dissenting). I fully agree with the majority that it is this court's duty to "make sure that contested custody proceedings * * * [are] conducted in a forum and in a manner that promotes the best interests of the child". It seems plain to me that this court had that obligation in mind on March 17, 1978 when it directed the Greene County Family Court to make a prompt determination of petitioner's application for custody. As the proper tribunal, and in accordance with its responsibilities, the Family Court complied with our directive. It conducted a hearing, took testimony from a number of witnesses, and concluded that it was in the child's best interest to remain in the Spath's temporary custody with the right to petition to adopt the child. Not to be overlooked is the fact that, pursuant to stipulation of the parties, an independent investigation was conducted by a child service agency to aid the Family Court and its Law Guardian in arriving at their ultimate decisions. This record certainly supports the conclusion that the welfare, happiness and best interest of the child will be most beneficially served by an affirmance of the Family Court order. To deny the Spaths the right to petition to adopt this child merely because they filled a vacuum created by the inadequacy or lapses of two county Departments of Social Services would not serve her interests nor, in my mind, would it fulfill the duty of this court.

The order appealed from should be affirmed.

GREENBLOTT, MAIN and MIKOLL, JJ., concur with MAHONEY, P. J.; KANE, J., dissents and votes to affirm in an opinion.

Order reversed, on the law and the facts, without costs, petition dismissed and matter remitted to the Family Court of Greene County for further proceedings not inconsistent herewith.