John D. Bennett, J.
This is an agency proceeding (Nassau County Department of Social Services) filed on July 27, 1973, for the adoption of a neurologically handicapped child born on September 13, 1967, by an adoptive family designated by the department and approved by a Family Court order of disposition dated August 21, 1972.
Prior to the institution of this proceeding the infant’s former foster parents moved by order to show cause dated July 17, 1973 for an order directing the department to return the infant to their care, permitting them to adopt the infant or in the alternative directing the petitioners herein to institute proceedings for the adoption of the infant. By an order dated October 3, 1973, based on its decision of September 14, 1973, the court permitted the foster parents to intervene conditionally in this proceeding, directed a hearing on the relevant issues and appointed a guardian ad litem to protect the infant’s interest. In its decision the court stated: “ It should he clear, however, that this court at this time is making no determination concerning what rights the P----have in the within proceeding or whether this court has any right to review the actions of the commissioner of the Department of Social Services in placing the child with a particular family for foster care and eventual adoption (Matter of Jewish Child Care Association of New York v. Sanders, 6 A D 2d 698, Case No. 10, affd. 5 N Y 2d *952 222; Matter of Spence Chapin Adoption Serv. v. Polk, 37 A D 2d 718, affd. 29 N Y 2d 196). Since adoption proceedings have been commenced, the court will permit Mr. & Mrs. P----to intervene and the court will hear all relevant issues concerning said adoption proceeding and make a determination on the basis of what is in the best interests of the child.”
On January 30, 1974 a hearing was had at which both the petitioners and intervenors appeared by counsel, the department by the County Attorney, and the infant by the guardian ad litem. Following the hearing, the guardian ad litem submitted his report to which there was attached the court’s confidential investigator’s report.
The infant who was born in Manhattan was taken by the natural mother to Nassau County and placed with the Commissioner of Social Services who, on September 21, 1967, boarded the infant with the intervenors as foster parents. By agreement dated October 10, 1967 and filed in the office of the County Clerk on October 27, 1967, the natural mother surrendered the infant to the commissioner who, pursuant to subdivision 1 of section 384 of the Social Services Law (formerly the Social Welfare Law) became, and still is, the legal guardian and custodian of the infant (Social Services Law, § 383, subd. 2).
The intervenors, under the supervision of the Department of Social Services, had the infant in their uninterrupted care from September 26,1967 to June 21,1972. During this 57-month period the intervenors were periodically visited by the department’s social workers, who attempted, without success, to have them adopt the infant.
Whatever their reasons, financial, emotional or otherwise, intervenors informed the social worker on March 27, 1972 that they were not interested in adopting the infant. Their lack of interest in adopting the infant is clearly evidenced by the undated list of suggestions made by the former foster mother and given to the social worker for the use of any future adopting parents in caring for the infant (Social Service Exhibit 2). This document is cogent proof that the intervenors had decided not to adopt the infant and their recognition that it was in the best interests of the infant to be placed with another family for adoption.
The commissioner was dutybound, in the best interest of the infant’s welfare, to find a family willing to adopt the infant rather than to permit the child to remain with foster parents (Social Services Law, § 392). Subdivision 3 of section 383 of the Social Services Law provides: “ Any adult husband and *953 Ms adult wife and any adult unmarried person, who, as foster parent or parents, have cared for a cMld continuously for a period of two years or more, may apply to such authorized agency for the placement of said child with them for the purpose of adoption, and if said child is eligible for adoption, the agency shall give preference and first consideration to their application over all other applications for adoption placements. However, final determination of the propriety of said adoption of such foster child shall be within the sole discretion of the. court, as otherwise provided herein.” (Emphasis supplied.) While foster parents having a cMld in their care for two or more years are entitled to a preference in adoption of the child under the above statute, to obtain such preference the foster parents must take some affirmative steps for the infant’s adoption while in their care.
There is a complete absence of proof on the part of the intervenors that they, at any time while the infant was in their care, informed the commissioner or anyone on his behalf that they were willing to adopt the infant. Their failure to do so deprived them of any statutory preference. The ¡first affirmative step by the intervenors toward the infant’s adoption was the order to show cause dated July 17,1973. At that time the intervenors were not then and had not been the infant’s foster parents for some 13 months, the child having been placed with the petitioners for adoption on June 21,1972.
The intervenors rely on the unnumbered paragraph following subdivision 3 of section 383 of the Social Services Law which provides:
“ Foster parents having had continuous care of a child, for more than twenty-four months, through an authorized agency, shall be permitted as a matter of right, as an interested party to intervene in any proceeding involving the custody of the child. Such intervention may be made anonymously or in the true name of said foster parents.”
From a casual reading of the above language, it would appear that the intervenors have an absolute right to intervene and be heard in tMs proceeding. Such an interpretation would permit every foster parent who had ever boarded or cared for a child for 24 months or more to intervene in any custody proceeding involving a foster child, no matter how many years had elapsed since the child was taken from their care. A more logical interpretation is that only a foster parent who has had the child in his care the required time and is then presently caring for the child at the time of the custody dispute is entitled *954 as a matter of right to intervene. Finally, it should be noted that the statute refers to “ custody ” whereas the case at bar is an adoption proceeding with custody being only incidental to the adoption.
This court should not substitute its judgment for that of the Department of Social Services in selecting adoptive parents for wards (Matter of Jewish Child Care Assn. of N. Y. v. Sanders, 6 A D 2d 698, affd. 5 N Y 2d 222; Matter of Spence-Chapin Adoption Serv. v. Polk, 37 A D 2d 718, affd. 29 N Y 2d 196; see Matter of Fitzsimmons v. Liuni, 51 Misc 2d 96, 115, revd. on other grounds 26 A D 2d 980).
Intervenors have alleged, but have not proven, any fraud or misleading statement on the part of any employee of the Department of Social Services regarding the availability to them of a subsidized adoption of the infant.
The sole delay in the adoption of the infant by the petitioners was occasioned by the Department’s necessity to investigate the cause and nature of the physical injuries sustained by the infant while in petitioners’ care. Whether the injuries were due to the greater freedom given the infant by the petitioners, as compared to the protective care given to the infant while with the intervenors is a matter of conjecture. No evidence was adduced that the injuries were attributable to any act or omission by petitioners.
The reports of the guardian ad litem and the court’s confidential investigator both indicate that the infant is developing well, progressing in school and adapting to the petitioners’ family. To remove the infant from the petitioners’ care to that of the intervenors, because of a change of heart, might result in a traumatic injury to the infant. The child’s continued development might be arrested and cause irreparable damage.
The court by its decision is not making any determination that the intervenors are a less desirable family than the petitioners. Both families should be commended for the devotion and love they have shown to this handicapped child. Nevertheless, the court’s decision must be based upon the best interests of the child which the court finds will be promoted by granting the petitioners’ application.