OPINION OF THE COURT
Jasen, J.
In this proceeding, appellants, foster parents certified with respondent Nassau County Department of Social Services, seek judicial review of a determination of respondent to remove for the purpose of adoption an infant, Chuck F., placed in appellants’ home under the foster care program.
The infant Chuck F., born out of wedlock on November 1, 1976, was placed by his natural mother with respondent for temporary placement while she contemplated surrender of the child for permanent adoption. Four days after the child’s birth, respondent placed Chuck F. with appellants, who had on four prior occasions served as foster parents, for the express purpose of providing the child with a preadoptive foster home. Consistent with this purpose, respondent, after receiving a surrender of the child by his natural mother, notified appellants on February 25, 1977, that Chuck F. would be removed from their care for permanent placement with prospective adoptive parents. Thereafter, on April 6, 1977, appellants contacted respondent and indicated for the first time a desire to adopt the child. A conference was held on May 10, 1977, at which respondent informed appellants that they would not be permitted to adopt Chuck F. The following day respondent served appellants with a formal notice of *386 removal. Rather than surrendering the child to respondent, appellants commenced this proceeding for a writ of habeas corpus to stay the removal of the child.
Special Term granted appellants physical custody of Chuck F. pending a "fair hearing” under section 400 of the Social Services Law, after which the Commissioner of the Department of Social Services upheld respondent’s determination to remove the child from appellants’ foster care. Upon a motion by respondent to confirm the commissioner’s determination, Special Term ordered a supplemental judicial hearing. On the basis of testimony elicited at both the fair hearing and the supplemental hearing, Special Term denied appellants’ application, concluding that the best interests of Chuck F. would be served by permitting respondent’s removal of the child to an adoptive home. The Appellate Division unanimously affirmed, without opinion. There should be an affirmance.
Prior to addressing the merits, we comment briefly upon the procedural posture in which this case comes before us. Pursuant to the statutory scheme created by the Legislature (Social Services Law, § 400), a foster parent aggrieved by a determination of the Social Services Department to remove a child from a foster home may request an internal review of the determination within the department in the form of a "fair hearing”. Upon the exhaustion of this administrative remedy, an aggrieved foster parent may seek judicial review of the agency’s determination in the Supreme Court through the vehicle of an article 78 proceeding. (See, e.g., Matter of Mundie v Nassau County Dept. of Social Servs., 88 Misc 2d 273; Matter of Ida Denise W., 77 Misc 2d 374.) The administrative and judicial review afforded an aggrieved foster parent under this statutory scheme, although dormant until the removal of a child from a foster home by the Department of Social Services, provides a sufficient forum for the consideration of the interests of foster children and parents to satisfy the demands of due process. (See Smith v Organization of Foster Families, 431 US 816, 847-856.)
Rather than invoking the procedure intended for review of removal orders, appellants commenced the instant proceeding in the nature of a writ of habeas corpus to secure judicial review of respondent’s determination to remove Chuck F. from appellants’ home prior to the act of removal. The availability of habeas corpus as a form of injunctive relief to forestall the removal of a child from a foster home until after *387 a "fair hearing” and judicial review of the agency’s determination runs counter to the scheme adopted by the Legislature. Moreover, although habeas corpus is frequently employed as a means of resolving custody disputes, appellants, who throughout this proceeding have retained de facto custody of Chuck F., can make no claim that respondent, in which legal custody of Chuck F. is vested, has improperly restrained or detained the child as a basis for issuance of the writ. (Cf. People ex rel. Williams v Windham Child Care, 55 AD2d 146.) Inasmuch as respondent has not raised this issue, however, we treat this proceeding for purposes of our review as if the trial court had converted it to an article 78 proceeding to review the determination of respondent after the "fair hearing”.
Turning to the merits, we proceed in our analysis with a frank realization that the factual setting before us is not a novel or isolated occurrence, but, rather, an all-too-common pattern of events indicative once again of the inherent difficulties presented in child custody cases. Before this court stand appellants who from all the testimony elicited at the hearings below appear to be of fine character and who undoubtedly are sincere in their offer of love for Chuck F. Equally zealous in its concern for the child, however, is respondent which, as the agency charged with legal custody of Chuck F., maintains that the child should be placed in an adoptive home which it has selected for the child after detailed investigation, rather than remaining for purposes of adoption in a foster home which, although investigated by respondent prior to the temporary placement for foster care, was investigated solely for that limited purpose without consideration of its future suitability as an adoptive home.
In balancing the parties’ competing contentions, both of which are premised upon the best interests of the child, we believe the nature and function of foster care as a program must be borne in mind. Through the foster care program, children, who have not as yet been surrendered for adoption, are placed by a State welfare commission or a recognized social agency with foster parents for "board and care”. (See Goldstein, Freud and Solnit, Beyond the Best Interests of the Child [1973], pp 23-26.) The foster parent-child relationship is a temporary relationship intended to provide the child with the benefits of a family setting, as an alternative to institutionalized care. (See Katz, Legal Aspects of Foster Care, 5 Fam LQ 283, 285.) As in the present case, foster parents generally *388 enter into this compensatory arrangement with the express understanding that the placement is temporary, rather than permanent as in the case of adoption, and that the legal custodian, here respondent, retains the right to remove the child upon notice at any time.
Because of the temporary nature and function served by foster care, the criteria employed by agencies in the investigation of prospective foster parents differ from that employed in the investigation of prospective adoptive parents. (See Matter of Spence-Chapin Adoption Serv. v Polk, 29 NY2d 196, 204.) Naturally, the former criteria center less upon psychological aspects of prospective parents and more upon their material qualifications: that is, their ability to provide "board and care”. (See McNamara, The Adoption Adviser [1975], p 122.) The common practice of matching a child’s adoptive parents as closely as possible with his or her biological parents in terms of, for example, age, race and religion, is, of course, not present to the same degree in the foster care program. (See Matter of Spence-Chapin Adoption Serv. v Polk, 29 NY2d 196, 204, supra.) Consequently, if after temporary placement, foster parents, contrary to their agreement, express a desire to adopt a foster child, the agency’s plan for the child’s adoption must be delayed while, as in this case, the agency, if it objects to the adoption by the foster parents, attempts to vindicate its conception of the child’s best interests through litigation. (See Matter of Runyon, 268 Cal App 2d 918, 921.)
The delay caused in such a case is amply demonstrated today. Chuck F. was placed in appellants’ home on November 5, 1976 prior to the surrender of the child for adoption by the natural mother. Shortly after the natural mother formally surrendered the child, respondent requested the return of the child for permanent placement. Notwithstanding this notification on February 25, 1977, the child remains in appellants’ home to this day, almost two years after the first notice of intent to remove was received by appellants.
Reluctance on the part of foster parents to deliver children placed in their care presents more than mere administrative inconvenience for the Department of Social Services and adoptive agencies: it seriously jeopardizes their continued utilization of the foster care program. On a previous occasion, we observed: "[Fjoster care custodians must deliver on demand not 16 out of 17 times, but every time, or the usefulness of foster care assignments is destroyed. To the ordinary fears in *389 placing a child in foster care should not be added the concern that the better the foster care custodians the greater the risk that they will assert, out of love and affection grown too deep, an inchoate right to adopt. The temporary parent substitute must keep his proper distance at all costs to himself.” (Matter of Spence-Chapin Adoption Serv. v Polk, 29 NY2d 196, 205, supra.) (See Matter of Convent of Sisters of Mercy v Barbieri, 200 Misc 112, 113; Matter of Reinius, 55 Wn 2d 117, 128, n 4.) Abandonment of the foster care program with a concomitant return to institutionalized temporary care would deal a staggering blow needlessly to children already accustomed to the taste of a bitter pill.
In taking into consideration the future viability of the foster care program in determining the merits of the present appeal, we do not abdicate our duty as parens patriae to determine custody on the basis of the best interests of the child. However, a finding that the interests of a foster child would best be served by vesting custody in foster parents requires more than a mere showing that the foster parents would provide a loving adoptive home for the child.
To this point, useful analogy can be drawn to foster parents who seek to retain custody of a child after the natural mother, who had placed the child with a child care agency for temporary care, seeks the return of her child. In such cases, it is not sufficient for the foster parents to demonstrate that they would offer the child a better home: they have a far greater burden. To suceed, they must demonstrate that the return of the child to his or her natural parent would result in the child’s grave detriment. (Matter of Jewish Child Care Assn. of N. Y. [Sanders], 5 NY2d 222; see Matter of Spence-Chapin Adoption Serv. v Polk, 29 NY2d 196, supra; cf. Matter of Bennett v Jeffreys, 40 NY2d 543.)
In a similar vein, although to an obviously lesser degree, foster parents who seek to retain custody of a child, thereby frustrating the adoption plan devised by the Department of Social Services or an adoption agency, the body charged with legal custody of a surrendered child, must demonstrate not only that they would make suitable adoptive parents, but, rather, that they would provide a better adoptive home than that planned by the department or agency. In other words, to succeed foster parents must bear the burden of showing a detrimental impact upon the child resulting from his or her removal from their foster care. (See State Dept. of Public *390 Assistance v Pettrey, 141 W Va 719; see, also, Drummond v Fulton County Dept. of Family & Children’s Servs., 237 Ga 449, cert den 432 US 905.)
As a practical matter, foster parents seeking to retain custody of a child will not, as a general rule, be capable of satisfying this burden. It must be noted that in a case such as the present, we are not reviewing an adoption proceeding in which the qualifications of prospective adoptive parents are at issue. As a result, foster parents who seek to retain custody of a foster child have no medium in which to demonstrate that they would provide a better adoptive home than the, as yet undetermined, parents whom the Department of Social Services or an adoptive agency would eventually select to adopt the foster child.
The inherent difficulty facing foster parents in establishing that the interests of a foster child would best be served by permitting their retention of the child’s custody is tempered by a legislative recognition that at the expiration of an extended period of foster care the Department of Social Services or an adoptive agency’s plan for a child’s adoption loses something of its prima facie validity as an expression of the best interests of the child. Pursuant to subdivision 3 of section 383 of the Social Services Law, foster parents who have cared for a child continuously for two years may apply to adopt the child and are entitled to be given a preference over all other adoption applicants.
In the instant case, however, this provision was inapplicable inasmuch as appellants had cared for Chuck F. for less than four months when they were first notified of respondent’s intention to remove Chuck F. from their care. Appellants, who by their own action, have delayed the child’s removal from their home to the present day, may not now seek the benefit of the statutory adoption preference. To afford appellants this preferential status would render nugatory the two-year custodial requirement imposed by the Legislature.
In sum, the function served by foster parents plays a vital role in custodial child care. That role is, however, by express agreement a limited and temporary one, the qualifications for which differ markedly from those deemed necessary for permanent placement. To permit foster parents to frustrate the adoptive plan devised by a child’s legal custodian, here the Department of Social Services, would seriously jeopardize the continued utilization of the State foster care pro *391 gram. Apart from the detrimental impact which reluctance of foster parents to part with children in their care would have on the foster care program, it would appear virtually impossible, as a practical matter, for foster parents in a proceeding to retain custody of a child to demonstrate that a foster child’s best interests dictate that he or she remain in their care, inasmuch as the adoptive plan formulated by the child’s legal custodian remains as yet unrealized due solely to the resistance of the foster parents.
Accordingly, the order of the Appellate Division should be affirmed.