OPINION OF THE COURT
Myron E. Tillman, J.
This matter came before the court on August 10, 1978, pursuant to a petition and order to show cause by the paternal uncle of the child, Chad Allen Humphrey, seeking an order to custody and naming the natural mother, Carla J. *176 Humphrey, respondent. During the pendency of the proceeding, the original petitioner withdrew and the paternal grandfather and stepgrandmother, Richard Humphrey and Beatrice Humphrey, petitioned the court, also seeking an award of custody, under subdivision (b) of section 651 of the Family Court Act, naming the natural mother respondent.
Respondent moved to dismiss the petition, claiming the petitioners lack standing to institute an action under subdivision (b) of section 651 of the Family Court Act. The court intimated that it would rule on this preliminary matter before proceeding further in the custodial action.
The court has had the benefit of all the petitions and supporting papers submitted therewith, and the memorandums of law submitted by counsel for the parties, and the report of the subject infant’s court-appointed Law Guardian.
Chad Allen Humphrey was born on the 4th day of May, 1976, to Daniel J. Humphrey and Carla J. Humphrey. The natural father died on the 2nd day of November, 1977, as the result of an automobile accident.
Chad Humphrey currently resides with the petitioners, and has so resided continuously since the 1st day of August, 1978 (and for frequent extended periods of time prior to that). The threshold question before the court is who has standing to commence an action under subdivision (b) of section 651 of the Family Court Act.
Subdivision (b) of section 651 of the Family Court Act states as follows: "When initiated in the family court, the family court has jurisdiction to determine, with the same powers possessed by the supreme court in addition to its own powers, habeas corpus proceedings and proceedings brought by petition and order to show cause, for the determination of the custody of minors.”
Subdivision (b) of section 651 confers upon the Family Court subject matter jurisdiction, but is silent as to the parties who may initiate the action. "Whether a party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy is what has traditionally been referred to as the question of standing to sue.” (Sierra Club v Morton, 405 US 727, 731-732.)
The State, as parens patriae, has the obligation to insure the welfare of all children. This blanket protection of children is activated whenever it is needed, and this State, through its *177 Legislature, has not by any statute provided a more specific form of action.
The original jurisdiction of custody matters was, before the enactment of subdivision (b) of section 651 of the Family Court Act, solely with the State Supreme Court, and to initiate action there can be both expensive and complex to the litigant compared to the Family Court. Now that the litigant can simply initiate action in the Family Court, many times without an attorney, there is the realistic likelihood of an increased number of actions being commenced to obtain custody of children in an already overburdened Family Court.
"It is plain that the interest of a parent in the companionship, care, custody, and management of his or her children 'come[s] to this Court with a momentum for respect lacking when appeal is made to liberties which derive merely from shifting economic arrangements.’ Kovacs v. Cooper, 336 U. S. 77, 95 (1949) (Frankfurter, J., concurring).” (Stanley v Illinois, 405 US 645, 651.) The Court of Appeals, in Matter of Bennett v Jeffreys (40 NY2d 543, 545-546) has stated, "Absent extraordinary circumstances, narrowly categorized, it is not within the power of a court, or, by delegation of the Legislature or court, a social agency, to make significant decisions concerning the custody of children, merely because it could make a better decision or disposition. The State is parens patriae and always has been, but it has not displaced the parent in right or responsibility.”
The Court of Appeals, in the Bennett case (supra), and in unanimously affirming Matter of Tyrrell v Tyrrell (47 NY2d 937), has set forth the guidelines which they feel constitute extraordinary circumstances, such as surrender, abandonment, persistent neglect, unfitness, or other like extraordinary circumstances.
The Legislature, by the enactment of articles 6 and 10 of the Family Court Act, and sections 383 and 384-b of the Social Services Law, has specifically given the right to commence neglect proceedings, family offense proceedings, and the like, to public welfare officials, authorized agencies or associations, institutions or foster parents. The legislative intent in giving the right to commence these proceedings to several agencies, associations, or individuals, is set forth in section 1011 of the Family Court Act, which states: "It is designed to provide a due process of law for determining when the state, through its family court, may intervene against the wishes of a parent on *178 behalf of a child so that his needs are properly met.” The purpose and intent of the law are designed to prevent spurious and malicious suits and intrusions into the privacy of the family brought by disgruntled third parties who may not approve of the life style of the parent or the manner in which the child is being raised.
The issue here must not be confused between the lack of standing in a substantive sense, and a lack of standing in a procedural sense. The test of standing is not the likelihood of success in the action, but the nature of the grievance.
When the court is asked to exercise its jurisdiction upon a petition, the equitable jurisdiction of the court is being activated. A remedy by petition is not a remedy by suit. "The distinction is implicit and fundamental alike in the genesis of the jurisdiction and in its subsequent development.” (Finlay v Finlay, 240 NY 429, 433.) The chancellor, in exercising his jurisdiction, "acts as parens patriae to do what is best for the interest of the child.” (Finlay v Finlay, supra, p 433.) The petition must show on its face that the remedy asked for will be for the benefit of the child. The remedy, therefore, is not to be used just to settle a dispute. "He [the chancellor] may act at the intervention or on the motion of a kinsman, if so the petition comes before him, but equally he may act at the instance of any one else.” (Finlay v Finlay, supra, p 434.)
This court, therefore, will accept jurisdiction, both substantive and procedural, over a petition brought under subdivision (b) of section 651 of the Family Court Act when the petition shows patently that the welfare of the child may require it.
In the case at bar, the petition shows that there are matters to be determined relative to the welfare of Chad Allen Humphrey. A further hearing, therefore, is warranted.