OPINION OF THE COURT
Bruce M. Kaplan, J.
Petitioners are seeking custody of Josephine and Joseph L. pursuant to section 651 of the Family Court Act and have moved for a right to inspect the records of the foster care agency and to visit with the children. Respondents have cross-moved to dismiss the petition alleging that petitioners lack standing to bring this proceeding.
The threshold question before the court is whether former foster parents, who voluntarily severed their relationship with the children one year prior to the commencement of these proceedings, have standing to seek custody of the children who are presently residing in another foster home, and whose custody and guardianship have been previously awarded to the Commissioner of Social Services for purposes of consenting to adoption.
*298 The last decade bore witness to an evolution of statutory and decisional law resulting in the accretion of a number of important rights to foster parents. This development emanated from a recognition of the phenomenon of psychological parenthood, and the notion that it was often in the best interests of the child to confer notable rights to persons who had achieved that status with respect to their foster children.
Of late the pendulum has ceased to swing in an expansive arc, and recent case law has notably limited the rights that foster parents enjoy. This case is an interesting one in that petitioners seek to avail themselves of rights and privileges enjoyed by a class to which they do not belong, at a time when limitations are being placed on persons who are indisputably members of that class.
The court has concluded that the petitioners lack standing to bring this proceeding, and accordingly it is dismissed. This conclusion is buttressed by the belief that granting petitioners standing to sue is contrary to the State’s child caring policies as embodied in title 1 of article 6 of the Social Services Law (Care and Protection of Children).
In addition the court believes that the orderly development of the law cannot countenance the untoward extension of rights granted to a discrete group of persons (foster parents) to a distinctly separate group (former foster parents) whose own purposeful choices have removed them from the factual setting that gave rise to foster parents’ rights.
Facts
The facts, which are not substantially in dispute, are as follows:
Joseph and Josephine L., age 11, were placed through the Commissioner of Social Services of the City of New York (CSS) with the Angel Guardian Home (AGH) for foster care purposes. In turn Angel Guardian Home placed the children in the foster home of the petitioners on May 9, 1973 where they remained until July 27, 1976 when petitioners requested their removal. On June 25, 1977 the *299 children were placed in petitioners’ foster home for a second time, and remained there until August 10, 1979 when petitioners again requested that they be removed. The children were subsequently placed in another foster home where they resided at the commencement of these proceedings on August 5, 1980.
During the period that the children lived in the petitioners’ home, they were freed for adoption in proceedings in Family Court, Kings County, bearing Docket Nos. B 3405, 06/77 and G 4230, 31/78. Custody of the children was awarded to the Commissioner of Social Services per section 384-b of the Social Services Law for purposes of adoption. On more than one occasion when the children were residing with petitioners the Angel Guardian Home worker discussed with them the possibility of their adopting the L. children. The petitioners always expressed qualifications and reservations about the idea.
On August 5, 1980 petitioners began the present proceedings seeking custody of the children pursuant to section 651 of the Family Court Act.
Subdivision (b) of section 651 of the Family Court Act provides that “the family court has jurisdiction to determine * * * proceedings brought by petition and order to show cause, for the determination of the custody of minors.” This section is silent, however, as to who has standing to petition the court for a determination of custody.
The question of standing does not arise in a vacuum. Rather, the nature of an individual’s interest in the outcome of a specific controversy determines whether he or she has the right to request judicial intervention into the resolution of that controversy. In order to satisfy the requirements of standing a party must have “a sufficient stake [in the outcome of ] an otherwise justiciable controversy to obtain judicial resolution of that controversy” (Sierra Club v Morton, 405 US 727, 731-732).
In this context we must not forget that custody and guardianship of the L. children has been awarded to the CSS and AGH for the purpose of planning and consenting to adoption.
*300 Petitioners were well aware of this since the phase of the proceedings involving the natural mother took place shortly before the children’s second sojourn with petitioners, and those against the natural father and the putative father while they were living under petitioners’ roof in 1978.
The award of custody and guardianship to CSS and AGH was in furtherance of the statement of legislative findings and intent contained in section 384-b (subd 1, par [a], cl [iv]) of the Social Services Law which states: “When it is clear that the natural parent cannot or will not provide a normal family home for the child and when continued foster care is not an appropriate plan for the child, then a permanent alternative home should be sought for the child.”
This court must determine whether the petitioners have a sufficient legal relationship to the children as to give rise to a claim of custody. Only if they have demonstrated a sufficient stake in the outcome of this matter are they entitled to request judicial intervention in the form of a section 651 custody proceeding.
One factor which the court must consider in determining the strength of the petitioners’ interest in the outcome of this proceeding should be how the result of entertaining it would comport with the articulated public policy of New York.
As a prelude to an examination of the rights of the petitioners who, as former foster parents, can assert only those rights, if any, due to that group, a brief review of the rights of biological parents and foster parents, is essential.
Rights of Biological Parents
The relationship between a biological parent and child has long been characterized as sacred. Consequently biological parents have been afforded a panoply of procedural and substantive rights with respect to the custody, care and nurture of their children. (Meyer v Nebraska, 262 US 390; Prince v Massachusetts, 321 US 158; Stanley v Illinois, 405 US 645.) The elements which combine to make the biological parent-child relationship one revered by the law include the fact of blood relations (Stanley v Illinois, su *301 pra), “the emotional attachments that derive from the intimacy of daily association” (Smith v Organization of Foster Families, 431 US 816, 844), and the role of parents in promoting a way of life through the instruction of children (Wisconsin v Yoder, 406 US 205, 231-233).
New York courts have also zealously protected the near inviolable right of natural parents to the custody of their children. (Matter of Bennett v Jeffreys, 40 NY2d 543; Matter of Corey L v Martin L, 45 NY2d 383; Matter of Sanjavini K., 47 NY2d 374.)
The New York State Legislature has also granted biological parents favored status with respect to the custody, care and nurture of their children. Section 384-b (subd 1, par [a], cl [ii]) of the Social Services Law states that “it is generally desirable for the child to remain with or be returned to the natural parent because the child’s need for a normal family life will usually best be met in the natural home”.
However, there are a limited number of circumstances when both the Legislature (Social Services Law, § 384-b, subd 1, par [a], cl [ii]) and the courts (Matter of Bennett v Jeffreys, supra) recognize that the biological parents’ right to custody of their child is subordinate to the State’s concern for the child’s welfare. When it becomes necessary, in the best interests of the child, to deprive the biological parents of the custody of their child either temporarily or permanently, placement of the child in the care of foster parents is one alternative recognized as viable by the Legislature (Social Services Law, § 384-b, subd 1, par [a], cl [iv]).
Rights of Foster Parents
1. The rights of foster parents, in the main, arise from statutory grants. Section 400 of the Social Services Law-grants foster parents a right to an appeal and a fair heáring from the State Department of Social Services when a child is removed from his/her home. Section 392 (subd 4, par [c]) of the Social Services Law entitles foster parents in whose home a foster child “resided or resides at or after the expiration of a continuous period of eighteen months” a right to notice and the opportunity to partici *302 pate in foster care review hearings. Subdivision 3 of section 383 of the Social Services Law provides a right of intervention into custody proceedings to foster parents who have cared for a foster child for a continuous period of more than 18 months. (Matter of Stevens, 51 AD2d 877.) This same statute also affords them a preference for adoption.
The Court of Appeals rejected a claim to extend the rights of foster parents in People ex rel. Ninesling v Nassau County Dept. of Social Servs. (46 NY2d 382). In that case the court refused to apply the subdivision 3 of section 383 of the Social Services Law preference for adoption to foster parents whose refusal to return their foster children when requested to do so some four months after foster care placement had commenced resulted in the foster children residing with them continuously for a period sufficiently long to qualify them for that preference. The court said (supra, p 390) that to grant them an adoption preference under those circumstances “would render nugatory the two-year custodial requirement imposed by the Legislature.” The Ninesling court made a number of pronouncements especially apposite to this case.
It is observed that: “The foster parent-child relationship is a temporary relationship intended to provide the child with the benefits of a family setting, as an alternative to institutionalized care. (See Katz, Legal Aspects of Foster Care, 5 Fam LQ 283, 285.) As in the present case, foster parents generally enter into this compensatory arrangement with the express understanding that the placement is temporary, rather than permanent as in the case of adoption, and that the legal custodian * * * retains the right to remove the child upon notice at any time.” (46 NY2d 382, 387-388, supra.)
It also noted: “Moreover, although habeas corpus is frequently employed as a means of resolving custody disputes, appellants, who throughout this proceeding have retained de facto custody of Chuck F., can make no claim that respondent, in which legal custody of Chuck F. is vested, has improperly restrained or detained the child as a basis for issuance of the writ.” (46 NY2d 382, 387, supra.)
The United States Supreme Court engaged in an exhaustive discussion of the foster care system and the na *303 ture of the rights of foster parents in Smith v Organization of Foster Families (431 US 816, supra).
The court, in considering whether subdivision 2 of section 383 of the New York Social Services Law was constitutionally defective in that it did not provide for a hearing prior to the removal of foster children from foster homes, said that foster parents were not entitled to the same degree of constitutional protection with respect to the care and custody of foster children as biological parents were afforded with respect to their natural children.
The court reasoned that, even though foster parents could develop significant emotional ties with their foster children, their status as foster parents was significantly different from the status of biological parents. The status of foster parents is grounded in a “knowingly assumed contractual relation with the State” whereas the status of biological parents is based upon “intrinsic human rights” (Smith v Organization of Foster Families, supra, at p 845).
The Supreme Court noted that foster care possessed the distinctive feature of being in a family for a planned period which was either to be temporary or extended. It observed that New York views foster care as a temporary transitional situation leading to, inter alia, adoption, and the establishment of a new permanent home. For this reason it approved the three-Judge court pronouncement that foster parents do not have a justified expectation that their status as foster parents be continued. Based upon this distinction, the court concluded that foster parents are due only the most limited rights, and it is appropriate to ascertain these rights from New York State law. (Smith v Organization of Foster Families, supra, at p 847.)
Mr. Justice Stewart’s concurring opinion (joined in by two other Justices) succinctly set the situation in its proper context (431 US 816, 856, supra): “The foster parent-foster child relationship involved in this litigation is, of course, wholly a creation of the State. New York law defines the circumstances under which a child may be placed in foster care, prescribes the obligations of the foster parents, and provides for the removal of the child from the foster home ‘in [the] discretion’ of the agency with custody of the child. *304 N.Y. Soc. Serv. Law § 383 (2) (McKinney 1976). The agency compensates the foster parents, and reserves in its contracts the authority to decide as it sees fit whether and when a child shall be returned to his natural family or placed elsewhere. See Part I-A of the Court’s opinion, ante, at 823-828. Were it not for the system of foster care that the State maintains, the relationship for which constitutional protection is asserted would not even exist.”
The Appellate Division was cognizant of the lessons of Smith v Organization of Foster Families (supra) and People ex rel. Ninesling v Nassau County Dept. of Social Servs. (supra) when it decided Matter of Byers v Kirby (67 AD2d 727). It affirmed the dismissal of a proceeding under subdivision (b) of section 651 of the Family Court Act brought by foster parents to determine custody of a foster child because the petitioners had failed to pursue, let alone exhaust, their administrative remedies.
Implicit in this decision is judicial recognition of the legislative policy that where recourse to the courts is available only after exhaustion of administrative remedies, then only persons granted administrative remedies, i.e., foster parents, should have recourse to the courts.
It is eminently clear from the New York statutes and the cited cases that foster parents are entitled to only very limited rights with respect to the custody of foster children.
It is with this perspective in mind that the court now considers what rights, if any, inure to former foster parents.
Rights of Former Foster Parents
It is self-evident that once a foster child leaves the home of the individuals who have served as his or her foster parents, those individuals become former foster parents, as are the petitioners in the present case.
The New York State Legislature has not chosen to confer any rights on former foster parents, but four cases which have addressed the issue provide probative guidance.
In Matter of Anonymous (77 Misc 2d 950) the court held that former foster parents, even though they had satisfied the time requirement of having cared for foster children for *305 a continuous period of over 24 months, did not have standing to intervene in an adoption proceeding because they were not caring for the child at the time proceeding was commenced.
Petitioners in the present case would ask the court to distinguish Anonymous on the basis that the instant petition is not a request to intervene in any proceeding. However, this court reads Anonymous to mean that the standing of the petitioners to intervene in that case was extinguished when the petitioners lost their status as foster parents, and the same policy considerations are apposite in the instant case.
In Matter of Smith v Lascaris (106 Misc 2d 1044), the court held that where custody and guardianship of a child has been awarded to an authorized agency in a termination proceeding, a court should not exercise jurisdiction over a petition filed by a private person seeking custody of the child.
The court, citing Matter of Humphrey v Humphrey (103 Misc 2d 175), accorded the maternal grandmother standing to bring a proceeding under subdivision (b) of section 651 of the Family Court Act but declined jurisdiction of the case based on the belief that an acceptance of jurisdiction would defeat the policy of section 634 of the Family Court Act which grants the Commissioner of Social Services custody of children for purposes of finding a permanent adoptive home.
The court analogized the commissioner’s role to that of a trustee in bankruptcy, one that imposed a paramount duty to find a permanent home for an abandoned child. To the extent that the children in Lascaris had been placed with the Commissioner of Social Services, the court determined that the best interests of the children were being served. (Matter of Smith v Lascaris, supra, pp 1049-1050.)
It went on to state that adoption was the proper procedure to follow for anyone seeking custody of a child whose custody and guardianship had been transferred to the commissioner, and dismissed the petition as contrary to the public policy of New York.
*306 While the result in Lascaris would remain the same if the court had found lack of standing, it is interesting to observe that the court relied on Humphrey even though Humphrey premised its acceptance of jurisdiction on the fact that the petitioner had demonstrated standing.
In order to resolve this apparent discrepancy an examination of that case is warranted.
In Matter of Humphrey v Humphrey (supra), the court held that the petitioners had standing to bring a section 651 custody proceeding, and accepted jurisdiction. It is easily distinguished from Lascaris and the present case. The custody dispute in Humphrey was between the child’s paternal grandparents and his natural mother. The court based its acceptance of jurisdiction on a patent showing that the welfare of the child required it. The court, acting in its role as parens patriae, was concerned that a refusal to grant standing to the petitioners would have worked to the detriment of the child in that matters relative to the welfare of the child would have gone unresolved. The court in the present case has no such concern since custody and guardianship of the L. children has already been placed with the Commissioner of Social Services who is entrusted with the duty of advancing the best interests of the children by placing them in a permanent adoptive home. (Family Ct Act, § 634.)
Additional factors which distinguish Humphrey from the present case include the fact that the Humphrey petitioners were the child’s grandparents and were caring for him at the commencement of the section 651 proceeding, while the respondent was the child’s mother who had only cared for him on an intermittent basis. The combination of these factors amounted to the Humphreys having a sufficient legal relationship to the child to demonstrate a definite stake in the outcome of the custody proceeding. Thus a grant of standing was warranted.
In light of the reasoning in Ninesling (supra), the present petition cannot show, and does not show on its face that the remedy asked for will be for the benefit of the child. This showing was the basis for the Humphrey court, guided by Finlay v Finlay (240 NY 429) accepting jurisdiction.
*307 Ninesling also renders petitioner’s and the Law Guardian’s reliance on Finlay legally misplaced.
In Matter of Dionisio R. (81 Misc 2d 436), the court recognized the right of former foster parents to notice and the opportunity to participate in a foster care review proceeding pursuant to section 392 (subd 4, par [c]) of the Social Services Law. While petitioner relies heavily upon Dionisio to support its argument of standing in the present case, Dionisio can be distinguished from the instant case on two important points. First, Dionisio concerned a section 392 foster care review proceeding in which the former foster parent exercised an arguably express statutory right to intervene whereas section 651 is silent as to standing. Secondly, the children in Dionisio were taken out of the foster home at the request of the agency while the petitioners in the instant case voluntarily returned their foster children to the Angel Guardian Home one year before they brought this proceeding.
Since Dionisio was premised in part on a recognition that “the statutes providing legal rights for foster parents *** express a legislative policy that the best interests of children are not served by uprooting them needlessly from homes in which deep attachments have been formed” (Matter of Dionisio R., supra, p 439), it is of little value when applied to a situation of voluntary relinquishment of foster children. Moreover its dicta respecting section 400 of the Social Services Law had been decimated by Smith v Organization of Foster Families (431 US 816, supra) and People ex rel. Ninesling v Nassau County Dept. of Social Servs. (46 NY2d 382, supra).
Matter of Reed v Daniels (45 AD2d 980) and Matter of Kurtis v Ballou (33 AD2d 1034) advanced in support of the position of the petitioners and the Law Guardian are factually inapposite since in both those cases the petitioners were foster parents whose foster children were removed from their homes by the Commissioner of Social Services, whereas the petitioners in the present case are former foster parents.
Furthermore, the holdings in Reed and Kurtis do not remain good law in light of the Court of Appeals decision in *308 Ninesling (supra) and Matter of Byers v Kirby (67 AD2d 727, supra).
Conclusion
The foster care system in the State of New York is a creation of the Legislature and, as such, the rights of foster parents to the care and custody of their foster children are governed solely by statute.
Foster parents, in the generally accepted meaning of that term, are contract service providers. The very existence of the status of foster parent arises out of a knowingly assumed contractual relationship between the State and the foster parents. Foster children may be removed from the foster home by the State at will (Social Services Law, § 383, subd 2) subject to a foster parent’s postremoval hearing rights under section 400 of the Social Services Law, but foster parents who have cared for a foster child for a continuous period of more than 18 months may apply for adoption and be entitled to a preference for adoption (Social Services Law, §383, subd 3). Since the Court of Appeals has refused to broaden rights granted to foster parents by the Legislature, and other State courts have refused to permit them to bring custody proceedings, or intervene in adoption proceedings I conclude that former foster parents have no right to petition for the custody of their former children. The rights to which individuals are entitled as foster parents derive from that very status. Once that status has been terminated, the rights which were attendant upon it are extinguished.
There is another reason why this court is loathe to create rights in former foster parents which heretofore have not existed. It is a well-accepted principle that children thrive in an atmosphere of stability, continuity and consistency. (Goldstein, Freud & Solnit, Beyond the Best Interests of the Child [1973].) The rearing of a child requires greater stability than a roller coaster treatment of custody. (Dintruff v McGreevy, 34 NY2d 887.) That the foster care system should contribute to the stability, continuity and consistency of a child’s environment is an express goal of the Legislature. (Social Services Law, § 384-b, subd 1, par [a], cl [iv].) To grant former foster parents standing to *309 petition for custody of children one year after they voluntarily severed their relationship with those children and after the custody and guardianship of the children has been awarded to the Commissioner of Social Services, would disrupt the stability, continuity and consistency of the children’s environment. This would be contrary to the public policy of this State.
In the case at bar the petitioners voluntarily abdicated their status as foster parents. Upon becoming former foster parents, the petitioners lost any rights to the care and custody of the L. children which might otherwise have been due to them as foster parents.
Therefore, it is the opinion of this court that the petitioners have not demonstrated a sufficient stake in the outcome of this matter to be invested with standing to bring this action. This court concurs with Judge McLaughlin’s pronouncement that the proper procedure for petitioners to follow would be to seek adoption.
Best Interest of Child
To the extent that the custody of L. children has been placed in the Commissioner of Social Services for purposes of finding a permanent adoptive home, the court determines that the best interest of the children are being served.