274

In the Matter of PEARLIE ROBERTS et al., Respondents, v CESAR PERALES, as Commissioner of the New York State Department of Social Services, et al., Appellants.

First Department, July 11, 1991

APPEARANCES OF COUNSEL

*Robert J. Schack* of counsel *(Robert Abrams, Attorney-General,* attorney), for Cesar Perales, appellant.

*Patrick L. Taylor* of counsel *(Pamela Seider Dolgow* with him on the brief; *Victor A. Kovner, Corporation Counsel,* attorney), for William J. Grinker, appellant.

*Gloria Ramakus* of counsel *(Bronx Legal Services,* attorney), for respondents.

## OPINION OF THE COURT

Asch, J.

The petitioners in this case are Ms. Pearlie Roberts, her two children and her four grandchildren. These six children lived with Ms. Roberts in a Bronx apartment receiving AFDC benefits (Aid to Families with Dependent Children, 42 USC § 601 *et seq.),* Medicaid and food stamps for a family of seven. In June of 1987 all six children were removed from Ms. Roberts. There was a finding of the Family Court in April 1988 of neglect on her part as to all six, including the abuse of three of them by placing their hands in the flame of a stove causing second- and third-degree burns.

The aid petitioner Roberts was receiving for a family of seven was not reduced by the city for a period of 11 months until May 6, 1988 even though all the children were out of the household and in foster care. After a fair hearing, a determination was made on August 11, 1988, which affirmed the city's action. On August 4, 1988, at a dispositional hearing, the Bronx Family Court ordered petitioner's two children be placed back with her on August 24, 1988. Two of the grandchildren were to be placed with her on September 16, 1988 and the remaining two as of December 24, 1988.

The petitioners brought this CPLR article 78 proceeding asserting that respondents were barred as a matter of law from reducing AFDC benefits to the petitioners because the children were only "temporarily" absent from the home. Petitioners further asserted that AFDC benefits could be

reduced or terminated only when children placed in foster care are freed for adoption. The IAS court agreed and annulled the State respondent's fair hearing decision ordering full benefits to be paid to Ms. Roberts for all six children retroactively to the date the benefits were reduced (144 Misc 2d 912).

The IAS court and the petitioners correctly note that foster care is only temporary. *(See, Smith v Organization of Foster Families,* 431 US 816, 823-824; *People ex rel. Ninesling v Nassau County Dept. of Social Servs.,* 46 NY2d 382, 387-388; Social Services Law § 384-b [1].) Petitioners, however, further contend that the respondents have a statutory obligation to provide services and other benefits either to prevent the dissolution of the family or reunite it (Social Services Law § 384-b [1]; 42 USC § 671 [a] [15]). They assert that the policy of reducing benefits when children are in a foster home, even for an extended period, is contrary to this statutory duty imposed on respondents and seriously threatens the reunification of the petitioners. The respondents, on the other hand, point out that following this rationale, the taxpayers would be paying Ms. Roberts for the children's maintenance although they were not in her household and she was not herself paying for such maintenance. At the same time, the taxpayers are making foster care payments for the same children. The respondents envision a scenario in which a poor family with several children could either maintain all their children at a poverty level or place 1 or 2 in foster care and use the additional AFDC funds received in their absence to improve the living standards of the others.

In the companion matter of *Campfield v Perales* (169 AD2d 267) we held that there "has been no adequate showing that the current policy of continuing shelter benefits for parents or guardians whose children are temporarily in foster care is insufficient to prevent the breakup of families. This policy includes the continuation of shelter benefits for up to 180 days while a child is in foster care and the reinstatement of shelter benefits for up to two months prior to the return of a child from foster care" *(supra,* at 271). Justice Smith, writing for this court in that case, set out the pertinent statutes and regulations, both Federal and State, including recent amendments, which compel the conclusion that payments of AFDC benefits need not continue indefinitely in all cases where children are in foster care until termination of parental rights.

This conclusion reached in *Campfield (supra)* and herein is

bolstered by recognition of the fact that the State and city coffers are finite and the public efforts in this regard have been stretched to afford some real measure of protective benefits to persons in petitioners' positions. In the perilous economic circumstances now confronting our city and State, the Governor, Mayor and elected State and local representatives are faced with many valid and ofttimes competing demands for services and benefits. So long as constitutional safeguards and statutory mandates are upheld, the courts must be wary of imposing their vision of the fairest allocation of funds. Instead, true deference and not simply "lip-service" must be given to the solutions deemed advisable by the elected representatives of the people.

The words of Justice Stewart over 20 years ago, in a case involving a Maryland regulation which imposed a ceiling on AFDC grants, regardless of the size of the family and its actual need, are particularly pertinent to the situation before us. "We do not decide today that the Maryland regulation is wise, that it best fulfills the relevant social and economic objectives that Maryland might ideally espouse, or that a more just and humane system could not be devised. Conflicting claims of morality and intelligence are raised by opponents and proponents of almost every measure, certainly including the one before us. But the intractable economic, social, and even philosophical problems presented by public welfare assistance programs are not the business of this Court. The Constitution may impose certain procedural safeguards upon systems of welfare administration * * *. But the Constitution does not empower this Court to second-guess state officials charged with the difficult responsibility of allocating limited public welfare funds among the myriad of potential recipients. *Cf. Steward Mach. Co. v. Davis,* 301 U.S. 548, 584-585; *Helvering v. Davis,* 301 U.S. 619, 644." *(Dandridge v Williams,* 397 US 471, 487.)

In *Campfield (supra,* at 269), we made that determination without prejudice to further proceedings in which plaintiffs "may demonstrate the effect of the loss of shelter benefits on the family unit". The procedural posture of the case now before us differs, however, from *Campfield,* in that, in the matter presently before us petitioners were afforded a hearing. We find that there was substantial evidence at that hearing which supported the determination of the respondent State Commissioner upholding the respondent City Commissioner in the reduction of Ms. Roberts' AFDC benefits to

reflect the removal of her children and grandchildren from her home to foster care for abuse and neglect. It was not contested that petitioner Roberts' dependents had been removed from her to foster care for over a year at the time of the hearing upon allegations found true by the Family Court that she had neglected and abused them. The Administrative Law Judge also had before him the fact that the abuse allegations included serious burns to three of the children, intentionally inflicted by Ms. Roberts. Further, at the hearing, neither petitioner nor her representative was able to state with certitude when or if the children would be returning. Although two of the children were ordered returned on August 24, 1988 followed by two others one month later and by the remaining two on December 24, 1988, it was not irrational at the time of the hearing for the Administrative Law Judge to believe that the children would be absent from the home for a longer period and that the duplicate payment of funds for AFDC benefits and foster care should not continue during this expected extended absence. Our judicial review is limited to finding whether there was substantial evidence supporting this administrative determination (Matter of Silberfarb v Board of Coop. Educ. Servs., 60 NY2d 979, 981), and, as noted, there was such substantial evidence.

It seems significant that the return home of all the children was not delayed or impeded by the interim reduction in AFDC benefits we now uphold. It should also be noted that Ms. Roberts' AFDC budget was further amended to reinclude the children, and the City Commissioner issued special grants to Ms. Roberts for the children's care during that interim period.

Accordingly, the judgment of the Supreme Court, New York County (Elliott Wilk, J.), entered January 10, 1990, which, inter alia, reversed and annulled the determination of respondent Commissioner of New York State Department of Social Services, after an administrative fair hearing, upholding the action of the respondent Commissioner of the New York City Department of Social Services, in reducing petitioner Pearlie Roberts' AFDC benefits to reflect the removal of her children and grandchildren from her home to foster care, should be reversed, on the law and facts, without costs or disbursements, the petition dismissed, and the determination of the respondent Commissioner of the New York State Department of Social Services reinstated.

MILONAS, J. P., ROSS, KASSAL and SMITH, JJ., concur.

Judgment, Supreme Court, New York County, entered on January 10, 1990, unanimously reversed, on the law and facts, without costs or disbursements, the petition dismissed, and the determination of the respondent Commissioner of the New York State Department of Social Services reinstated.