OPINION OF THE COURT
Marjorie C. Mix, J.
By petition sworn to on November 9, 1999, Dennis P. Rader alleged, inter alia, that respondent Tracy L. Rader assaulted Shane Spencer, date of birth December 21, 1986, and sought an order of protection on behalf of Shane requiring the respondent, Shane’s mother, to stay away from the child. Although the petition alleges that Shane is “Petitioner’s son” and that the alleged assaultive conduct occurred following Shane’s visitation with “his father,” these parties are well known to the court, and petitioner’s counsel has several times acknowledged in open court as well as in petitioner’s most recent papers that Shane is, in fact, the petitioner’s stepson.
By way of background, this most recent family offense petition closely follows an acrimonious custody dispute which was eventually resolved on the consent of the parties, with petitioner assuming primary custody of the parties’ three biological children, ages three, eight, and nine, and respondent mother retaining custody of Shane, age 12, who is not the petitioner’s child. Shane’s father, named as a party and noticed, resides in Germany and did not appear. The parties also agreed, inter alia, that Shane would have visitation with petitioner and his siblings on alternate weekends. That order, entered on consent of the parties, has since been appealed by respondent Tracy L. Rader. (But see, e.g., Goodman v Goodman, 150 AD2d 636 [2d Dept 1989].)
On November 10, 1999, the court dismissed the instant petition, further ordering that the matter be referred to Child Protection Services pursuant to Family Court Act § 1034 regarding the possible neglect of Shane. The court explained to the petitioner that should the Department of Social Services, as the result of its investigation, petition to have Shane adjudged an abused or neglected child, and if the court then determined the child should be removed from the respondent mother’s home, petitioner might then be considered as a possible Family Court Act § 1017 placement resource. However, the petitioner was also admonished, in substance, that he would not be successful in any strategy to use the mechanism of a peace order to disrupt respondent’s care and custody of her child. The petition was then dismissed on the ground that the *187 petitioner stepfather, who does not reside with the respondent mother or her child, is not a proper party to originate a family offense proceeding on behalf of Shane against his mother. Parenthetically, the stepfather’s petition is necessarily based on hearsay, inasmuch as he does not reside with respondent or Shane and does not claim to have witnessed the alleged offensive conduct.
Petitioner now brings the instant motion for reargument, contending that the Family Court has jurisdiction in this matter pursuant to Family Court Act § 812 (1) (a), (b), (c) and (d), and that petitioner has standing to originate this proceeding pursuant to Family Court Act § 821. For the reasons that follow, the court will sua sponte dismiss the motion.
Petitioner argues that Family Court Act § 812 (1) provides that the Family Court has concurrent jurisdiction with the criminal courts over any proceeding involving enumerated offensive conduct “between spouses or former spouses, or between parent and child or between members of the same family or household.” The statute further defines “members of the same family or household” as “persons related by consanguinity or affinity” (Family Ct Act § 812 [1] [a]), persons legally or formerly married to one another, and persons who have had a child together. Since the offensive conduct here allegedly occurred between respondent mother and her child, the Family Court’s jurisdiction could presumably be invoked by a petition originated by a proper party.
Petitioner next argues that he is a proper party to originate a proceeding against respondent mother pursuant to Family Court Act § 822, inasmuch as he falls under the definition of a person “in the relation to the respondent of spouse, or former spouse, parent, child, or member of the same family or household.” (Family Ct Act § 822 [a].) In essence, petitioner argues that since he is still legally married to respondent, albeit estranged from the marriage and residing apart from her, he is nonetheless a member of the same “family” as respondent mother and her child, as that term is defined in Family Court Act § 812 (1). Petitioner asserts that he is thereby a proper party to originate a proceeding on behalf of his stepson, to whom he remains related by affinity.
There is no question that if petitioner was alleging that he himself was the victim of a family offense perpetuated by respondent, he would have standing to originate a proceeding on his own behalf. What is at issue here, however, is whether petitioner may bring a family offense proceeding on behalf of *188 his stepson, who resides with respondent mother and is in her exclusive custody. Petitioner claims the opinion of the Appellate Division, Fourth Department, in Matter of Orellana v Escalante (228 AD2d 63 [4th Dept 1997]) supports the position that he may originate such a proceeding.
In Matter of Orellana v Escalante (supra), a former stepdaughter sought an order of protection against her former stepfather. Justice Green, writing for a unanimous panel, held that following the mother’s divorce of her daughter’s stepfather, the stepfather and stepdaughter no longer had a relationship of affinity qualifying them as “members of the same * * * household” within the meaning of Family Court Act § 812 (1). The Fourth Department concluded that the Family Court therefore lacked jurisdiction to entertain the application by the petitioner for an order of protection against her former stepfather. Petitioner relies heavily on the Fourth Department’s observation in Orellana that during the time that the respondent stepfather and the petitioner’s mother were married, “the parties were persons related by affinity and thus members of the same family or household for the purpose of a family offense proceeding.” (Supra, at 65.)
However, the fact pattern in the case at bar is readily distinguishable from that of any reported case which this court has been able to locate, including Matter of Orellana v Escalante (supra). Here, the offensive conduct did not allegedly occur between a petitioner and a steprelation, as was the situation in each of the reported cases which this court has reviewed; rather, the stepparent in the instant case seeks to originate a proceeding on behalf of the stepchild as against the child’s mother. Indeed, the noncustodial stepparent here “requests an order on behalf of Shane and requests that Respondent stay away from Shane.” (See, petition, sworn to Nov. 9, 1999, if 3.)
What is fatal to this petition is that the gravamen of the allegations and the specific relief demanded sound within the purview of an article 10 child protection proceeding, rather than an article 8 family offense proceeding. Obviously, this court cannot simply grant the relief demanded in the petition and enter an article 8 peace order requiring the custodial respondent mother to “stay away” from Shane; since neither a custody nor a child protection proceeding is presently pending, such a peace order would simply separate the child from his only legal custodian and render the child homeless. Rather, in substance, the court is being importuned to “intervene against the wishes of a parent on behalf of a child so that his needs are *189 properly met,” the stated purpose of article 10. (See, Family Ct Act § 1011 [emphasis added].) Observing that “there is legislation covering this type of proceeding,” the Court of Appeals has been strongly critical where a party, without authority pursuant to Family Court Act § 1032 to originate a child protective proceeding, has attempted to circumvent the statutory article 10 procedures in order to intervene against a parent on behalf of a child. (Matter of Weber v Stony Brook Hosp., 60 NY2d 208, 212 [1983], cert denied 464 US 1026.)
Pursuant to Family Court Act § 1032, an article 10 proceeding may be originated only by a child protective agency or “a person on the court’s direction.” (Family Ct Act § 1032 [b].) It has been noted that Family Court Act § 1032 was amended in 1973 (L 1973, ch 1039, § 9) “to erect a barrier against the indiscriminate initiation of child protection proceedings.” (See, Besharov, Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 1032, at 64.) An earlier version of the statute, repealed in 1973, permitted “ ‘a parent or other person interested in the child’ and ‘any person having knowledge or information of a nature which convinces him that a child is neglected’ ” to initiate child protective proceedings. (Id., at 65.) The legislative purpose in circumscribing the persons who may originate child protection proceedings “indicates * * * that judicial proceedings touching the family relationship should not be casually initiated and imposes upon the courts the obligation to exercise sound discretion before permitting such petitions to be filed.” (Matter of Weber v Stony Brook Hosp., supra, 60 NY2d, at 212.)
The court is cognizant that the Legislature has on three occasions “broadened the definition of ‘members of the same family or household’ in order to fill perceived gaps in jurisdiction over family offense proceedings.” (Matter of Orellana v Escalante, supra, at 65.) However, this court is not convinced that the Legislature perceived a need to vest the Family Court with jurisdiction over an estranged stepfather’s petition demanding a removal order on behalf of a child against the child’s custodial mother. That field is occupied by article 10, which exclusively confers upon the child protective agency, or other persons acting at Family Court’s direction, the duty to seek the court’s intervention to effect the removal of children at risk from their homes.
The detailed statutory scheme of article 10 interposes the child protective agency as the entity responsible for investigating, screening, and prosecuting child protection proceedings *190 against the parents or custodians of children. As such, article 10 is “designed to prevent spurious and malicious suits and intrusions into the privacy of the family brought by disgruntled third parties who may not approve of the life style of the parent or the manner in which the child is being raised.” (Matter of Humphrey v Humphrey, 103 Misc 2d 175, 178 [Fam Ct, Steuben County 1980].)
The court finds that article 10 unambiguously and exclusively reserves to the child protective agency, or other person specially designated by the court, the duty to originate a protective proceeding to “intervene against the wishes of a parent on behalf of a child so that his needs are properly met,” and thereby seek the removal of the child from the home of a parent. (Family Ct Act § 1011.) In determining whether the Legislature intended Family Court Act §§ 812 and’ 822 to include the petitioner stepfather as a proper party to seek an order removing the subject child from his mother’s care, the court is mindful that the legislative intent must be determined by harmonizing the statutory scheme of the Family Court Act in its entirety: “It is a fundamental rule of statutory construction that a statute or legislative act is to be construed as a whole, and that all parts of an act are to be read and construed together to determine the legislative intent. So, in construing a statute the court must take the entire act into consideration, or look to the act as a whole, and all sections of a law must be read together to determine its fair meaning. Statutory language, however strong, must yield to what appears to be intention and that is to be found not in the words of a particular section alone but by comparing it with other parts or provisions of the general scheme of which it is a part.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 97, at 211-213.)
The conclusion follows that to permit the stepfather here to seek a peace order removing the child from the home of his only legal custodian, the child’s mother, would be incongruous with the general scheme of the Act, which under article 10 vests the child protective agency with the duty to investigate and prosecute child protective proceedings. As part of that scheme, article 10 provides pursuant to section 1034 that the Family Court may direct the child protective agency to initiate an investigation of the possible neglect or abuse of a child; when alerted to the allegations made in the instant petition, this court ordered the Department of Social Services to undertake such an investigation. The Department, rather than the nonparent petitioner, is statutorily entrusted with the *191 responsibility to petition for Shane’s removal from his parent’s home if the child is at risk of harm.
Clearly, as between parents, a petition for a peace order on behalf of a child may result in the eviction of the offending parent from the household, or occasion the transfer of residential custody to the nonoffending parent. Here, however, the petitioner seeks to employ the mechanism of a removal order to necessarily effect the transfer of custody to a nonparent, a result which may be obtained only in the context of an article 10 petition or, under extraordinary circumstances, in a properly initiated custody proceeding. (See, Matter of Bennett v Jeffreys, 40 NY2d 543 [1976].) To indiscriminately permit the origination of removal proceedings against custodial parents by persons more remotely related to children by consanguinity or affinity would subvert the careful design of article 10, and would be contrary to the well-settled rationale of Bennett v Jeffreys (supra), and its progeny.
Accordingly, this court holds that article 8 of the Family Court Act does not authorize a person who is neither the child’s parent nor lawful custodian to originate and maintain a proceeding to remove the child from the home of a custodial parent. As a matter of law, the court will therefore adhere to its original decision to dismiss the instant petition, having ordered the Department of Social Services to investigate the allegations made therein.
Wherefore, it is ordered that petitioner’s motion for leave to reargue is denied, with prejudice.